Rel: December 16, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

## CR-20-0201

_____

## Corey Allen Wimbley

### v.

## State of Alabama

## Appeal from Washington Circuit Court
## (CC-09-170.60)

COLE, Judge.

Corey Allen Wimbley, an inmate on Alabama's death row, appeals the circuit court's summary dismissal of his Rule 32, Ala. R. Crim. P., petition for postconviction relief.

## Facts and Procedural History

In 2009, Wimbley was indicted for and convicted of two counts of capital murder -- one count for killing Connie Ray Wheat during the commission of a robbery, see § 13A-5-40(a)(2), Ala. Code 1975, and one count for killing Wheat during the commission of an arson, see § 13A-5-40(a)(9), Ala. Code 1975. At trial, the State's evidence showed the following:

> "On the morning of December 19, 2008, Wheat was working alone at the Harris Grocery store, which he owned, in Wagarville. Two women, one of whom was a longtime friend of Wimbley's, were driving by Harris Grocery when they saw Wimbley run out of the store and get into an automobile driven by Juan Crayton, III. A short time later, a customer walked into Harris Grocery to make a purchase. She smelled gasoline and saw liquid on the floor but was unable to locate Wheat. Other customers came into the store, and one of them, T.J. Smith, walked behind the counter of the store, where he found Wheat dead on the floor. Smith went outside and telephoned emergency 911.

> "Alabama State Trooper Robert Knapp was driving by Harris Grocery and saw several people in the parking lot gesturing at him. Trooper Knapp pulled into the parking lot of Harris Grocery and entered the store. He smelled gasoline and saw liquid on the floor and the counter. After looking at Wheat's body, Trooper Knapp secured the store and contacted his dispatcher, asking for additional law-enforcement officers to be sent to Harris Grocery.

> "Crayton drove himself and Wimbley to the home of Earnest Lee Barnes in Mobile. After speaking outside to the

2

two men, Barnes went alone into his house. When Barnes came out, he noticed that Crayton had moved Crayton's car from a concrete slab to a muddy area on the side of Barnes's house. The three men then got into Barnes's car and drove to a mall. Barnes stopped at a service station and, while pumping gasoline into his car, received a telephone call from his cousin, who told him that Wimbley and Crayton had 'just done something bad up there in Courtelyou.'[1] (R. 731.) Barnes took the two men back to his house, where Crayton and Wimbley argued about who would drive Crayton's car. Crayton decided that he would drive the car, and Wimbley asked Barnes to drive him to the Greyhound bus station. Barnes drove Wimbley to the bus station, where Wimbley got his suitcase out of Barnes's car, went inside the station, and bought a bus ticket to Tampa, Florida.

"Barnes telephoned his cousin, with whom he had spoken at the service station, and his cousin told him that Wimbley and Crayton had killed someone. Barnes then went to the McIntosh Police Department to report his contact with Wimbley and Crayton.

"Wimbley went into a bathroom at the bus station and changed his clothes. Later that day, he was arrested at the bus station and transported to the Washington County jail.

"Crayton abandoned his car at a service station in Mobile. Inside the car, officers conducting a search pursuant to a search warrant found a box of matches and a pair of work gloves.

"Inside Harris Grocery, law-enforcement officers found the bullets that had passed through Wheat's body. Officers also noticed a red liquid on the counter and saw that the liquid had been 'slung across the floor.' (R. 683.) Officers found struck matches and noticed that one area of the floor was charred and that there was a 'small amount of charring on the

counter by the register.' (R. 811.) Outside the store, officers found a plastic bottle containing residue.

"Barnes gave officers permission to search his property. In Barnes's backyard, officers found Wheat's driver's license, Social Security card, and bank cards.

"Officers recovered Wimbley's suitcase from the bus station and searched it pursuant to a search warrant. The officers found $325 in assorted United States currency inside the pocket of a pair of shorts in the suitcase.

"After Wimbley was arrested, he invoked his right to counsel. Thereafter, on December 23, 2008, Wimbley requested to speak with members of the Washington County Sheriff's Office. Deputy Ferrell Grimes went to the jail where he reviewed a <u>Miranda</u>[2] form with Wimbley before Wimbley signed it. During the interview that followed, Wimbley first told Deputy Grimes that, on the day of the murder, he had asked Crayton to take him to Mobile. Crayton and another man Wimbley knew only as 'Peanut' had picked up Wimbley and the three had gone to Creola where Crayton let Peanut out of the car. Crayton and Wimbley then had gone to Barnes's house. After Deputy Grimes told Wimbley that witnesses had seen him leaving the Harris Grocery after the shooting and that Crayton had talked with law enforcement, Wimbley said that Crayton had picked him up the morning of the robbery and murder and had given Wimbley words of encouragement. Wimbley told Deputy Grimes that before Crayton picked him up that day, Wimbley had mixed gasoline with a Fanta soft drink in a bottle. Wimbley stated that he took the bottle into Harris Grocery, shot Wheat, stole cash, and then poured the mixture in the bottle throughout the store. Wimbley also said that he first shot Wheat in the arm and that he had poured the gasoline mixture on Wheat after he had shot him.

4

"In January 2009, officers again searched Barnes's house. In a shed in the backyard, officers found a .38 caliber handgun, a compact disc case, and some United States currency.

"Dr. John Krolikowski, a senior medical examiner with the Alabama Department of Forensic Sciences, conducted the autopsy on Wheat. Dr. Krolikowski concluded that Wheat had been shot three times. One bullet struck Wheat in his right arm and shoulder before exiting his back. Another bullet entered the right side of Wheat's chest, traveled through his heart, and exited the left side of his chest. The third bullet entered Wheat's back and exited his chest. The cause of Wheat's death was multiple gunshot wounds, and the manner of his death was homicide.

"Timothy McSpadden, a firearm and tool-mark examiner with the Alabama Department of Forensic Sciences, determined that the bullets recovered from Harris Grocery had been fired from the .38 caliber handgun found in the shed at Barnes's house.

"Gary Cartee, a Deputy State Fire Marshal with the State Fire Marshal's Office, determined that the fire inside Harris Grocery was intentionally set and that the cause of the fire was the 'introduction of ignitable liquids onto the scene, set by an open flame, a match.' (R. 799.)

"Sharee Wells, a forensic scientist with the Alabama Department of Forensic Sciences, analyzed samples of liquids taken from Harris Grocery and the clothes Wheat was wearing when he was shot. Wells detected gasoline on the pair of pants and shirt Wheat was wearing when he was shot. She also determined that liquid found on the counter, floor, and a shelf inside Harris Grocery and liquid taken from the plastic bottle found in the parking lot of Harris Grocery was gasoline.

> "The Federal Bureau of Investigation determined that one of the shoes Wimbley was wearing at the time of his arrest matched a shoe print officers found on a paper bag behind the counter at Harris Grocery.
>
> "_____
>
> "[1]Testimony demonstrated that Harris Grocery was located at the intersection of Courtelyou Road and United States Highway 43.
>
> "[2]Miranda v. Arizona, 384 U.S. 436 (1966)."

Wimbley v. State, 191 So. 3d 176, 192-94 (Ala. Crim. App. 2014) (plurality opinion).  After the jury found Wimbley guilty of both counts of capital murder, it recommended that he be sentenced to death.[1]  The trial court followed that recommendation.

On December 19, 2014, this Court affirmed Wimbley's capital-murder convictions and death sentences, and, on September 25, 2015, the Alabama Supreme Court denied his petition for a writ of certiorari.  On May 31, 2016, however, the Supreme Court of the United States vacated this Court's judgment and remanded Wimbley's case to this Court for further consideration in light of its decision in Hurst v. Florida, 577 U.S.

---

[1]The jury recommended that Wimbley be sentenced to death by a vote of 11 to 1 for his capital-murder-robbery conviction, and it recommended that he be sentenced to death by a vote of 10 to 2 for his capital-murder-arson conviction.  (Record in CR-11-0076, C. 356-57.)

91 (2016). See Wimbley v. Alabama, 578 U.S. 1009 (2016). This Court did so, and, on December 16, 2016, this Court again affirmed Wimbley's capital-murder convictions and death sentences. See Wimbley v. State, 238 So. 3d 1268 (Ala. Crim. App. 2016). Wimbley again petitioned the Alabama Supreme Court for a writ of certiorari. The Alabama Supreme Court denied his petition on May 19, 2017. This Court issued a certificate of judgment that same day, making Wimbley's capital-murder convictions and death sentences final. Wimbley then petitioned the Supreme Court of the United States for a writ of certiorari. The Supreme Court of the United States denied his petition on October 30, 2017. See Wimbley v. Alabama, 138 S. Ct. 385, 199 L. Ed. 2d 286 (2017).

On May 21, 2018, Wimbley filed a Rule 32 petition challenging his capital-murder convictions and death sentence. (C. 9-127.) In his petition, Wimbley alleged that his trial counsel were ineffective during the "culpability phase of trial" (C. 33-86), "during the penalty phase of trial" (C. 86-119), and "during the sentencing phase of the trial" (C. 119-20). Wimbley also alleged that the State had "violated [his] rights to due process of law … when it failed to disclose to [him] that one of its crucial witnesses had reasons to falsify her testimony against him." (C. 120-24.)

7

On September 9, 2018, the State moved to dismiss Wimbley's petition. (C. 151-250.)

Wimbley then moved the circuit court for permission to amend his petition (C. 252-56), which the circuit court granted. (C. 265.) On June 3, 2019, Wimbley filed his first amended Rule 32 petition, re-alleging the claims that he raised in his original petition, adding new allegations to some of the previously raised claims of ineffective assistance of counsel, and adding a claim that "[e]volving standards of decency prohibit … executing [him] because he is severely mentally ill." (C. 418-24.) Additionally, at points throughout his amended petition, Wimbley asked the circuit court for funding to hire different expert witnesses. On October 1, 2019, the State moved to dismiss Wimbley's first amended Rule 32 petition. (C. 436-547.)

Over a year later, the State moved the circuit court "to enter a final order granting the State's motion to dismiss Wimbley's amended Rule 32 petition or … schedule a status hearing" in Wimbley's case. (C. 550.) The

State also filed a proposed final order for the circuit court's consideration.[2] (C. 553.)

On October 9, 2020, Wimbley moved the circuit court for "extraordinary expenses for psychological evaluation services and expert witnesses services." (C. 556.) In his motion, Wimbley asked the circuit court "for an order authorizing the expenditure of fifty thousand dollars ($50,000) in order to have [him] evaluated by a psychologist <u>and</u> to retain the services of several certain forensic experts, subject to application for additional funds if needed." (C. 556.) The State objected (C. 562-66), and the circuit court denied Wimbley's motion on November 5, 2020. (C. 568.) That same day, the circuit court summarily dismissed Wimbley's first amended petition. (C. 575-620.)

On December 3, 2020, Wimbley moved the circuit court to reconsider its judgment (C. 621-30), but the circuit court did not rule on Wimbley's motion. This appeal follows.

---

[2]In its motion, the State noted that its proposed order was attached. The State's unsigned proposed order is not included in the record on appeal. "'It is the appellant's duty to provide this court with a complete record on appeal.'" <u>McCray v. State</u>, 629 So. 2d 729, 733 (Ala. Crim. App. 1993).

## Standard of Review

A circuit court may summarily dismiss a Rule 32 petition pursuant to Rule 32.7(d), Ala. R. Crim. P.,

> "[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings."

See also Hannon v. State, 861 So. 2d 426, 427 (Ala. Crim. App. 2003); Cogman v. State, 852 So. 2d 191, 193 (Ala. Crim. App. 2002); Tatum v. State, 607 So. 2d 383, 384 (Ala. Crim. App. 1992).

When reviewing a circuit court's summary dismissal of a postconviction petition, "'[t]he standard this Court uses … is whether the [circuit] court abused its discretion.'" Lee v. State, 44 So. 3d 1145, 1149 (Ala. Crim. App. 2009) (quoting Hunt v. State, 940 So. 2d 1041, 1049 (Ala. Crim. App. 2005)). If the circuit court bases its decision on a "'cold trial record,'" however, we apply a de novo standard of review. Ex parte Hinton, 172 So. 3d 348, 353 (Ala. 2012). "[W]hen reviewing a circuit court's rulings made in a postconviction petition, we may affirm a ruling if it is correct for any reason." Bush v. State, 92 So. 3d 121, 134 (Ala. Crim. App. 2009).

As explained below, some of the claims raised by Wimbley were summarily dismissed because they were without merit or failed to state a claim for relief. And some of Wimbley's claims

"were summarily dismissed based on defects in the pleadings and application of the procedural bars in Rule 32.2, Ala. R. Crim. P. When discussing the pleading requirements for postconviction petitions, we have stated:

"'The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petition is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So. 2d 724 (Ala. Crim. App. 2003).'

"Hyde v. State, 950 So. 2d 344, 356 (Ala. Crim. App. 2006).

"'"Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief." Boyd v. State, 746 So. 2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a conclusion "which, if true, entitle[s] the petitioner to relief." Lancaster v. State, 638 So. 2d 1370, 1373 (Ala. Crim. App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as

> provided under Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts.'
>
> "Boyd v. State, 913 So. 2d 1113, 1125 (Ala. Crim. App. 2003). '[T]he procedural bars of Rule 32[.2, Ala. R. Crim. P.,] apply with equal force to all cases, including those in which the death penalty has been imposed.' Burgess v. State, 962 So. 2d 272, 277 (Ala. Crim. App. 2005)."

Washington v. State, 95 So. 3d 26, 38-39 (Ala. Crim. App. 2012).

We also note that, "[a]lthough on direct appeal we reviewed [Wimbley's] capital-murder conviction[s] for plain error, the plain-error standard of review does not apply when an appellate court is reviewing the denial of a postconviction petition attacking a death sentence." James v. State, 61 So. 3d 357, 362 (Ala. Crim. App. 2010) (citing Ex parte Dobyne, 805 So. 2d 763 (Ala. 2001)). With these standards in mind, we now turn to the arguments Wimbley raises on appeal.

## Discussion

On appeal, Wimbley argues that the circuit court erred when it summarily dismissed the claims raised in his Rule 32 petition. We address each argument in turn.

## I. Ineffective Assistance of Counsel

Wimbley first argues that the circuit court erred when it summarily dismissed his claims of ineffective assistance of counsel during the guilt

phase and the penalty phase of his trial and at the judicial-sentencing

hearing. To prevail on his claims of ineffective assistance of counsel,

Wimbley must show both that his counsels' performance was deficient

and that he was prejudiced by his counsels' deficient performance. See

Strickland v. Washington, 466 U.S. 668 (1984).

When reviewing claims of ineffective assistance of counsel, we are

mindful that

> "'"[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under

13

the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."

"'Strickland, 466 U.S. at 689, 104 S. Ct. 2052.

"'"[T]he purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S. Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir. 1992) ('We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.'). We recognize that '[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.' Strickland, 104 S. Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' Burger v. Kemp, 483 U.S.

14

>             776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d
>             638 (1987)."
>
>       "'Chandler v. United States, 218 F.3d 1305, 1313-
>       14 (11th Cir. 2000) (footnotes omitted).
>
>       "....
>
>       "We also recognize that when reviewing claims of
>       ineffective assistance of counsel 'the performance and
>       prejudice components of the ineffectiveness inquiry are mixed
>       questions of law and fact.' Strickland v. Washington, 466 U.S.
>       668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)."

Marshall v. State, 182 So. 3d 573, 582-83 (Ala. Crim. App. 2014).

Additionally, we note that "the claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is an independent claim that must be sufficiently pleaded." Coral v. State, 900 So. 2d 1274, 1284 (Ala. Crim. App. 2004), overruled on other grounds, Ex parte Jenkins, 972 So. 2d 159 (Ala. 2005).

Finally, we note that this Court, in Hyde v. State, 950 So. 2d 344, 356 (Ala. Crim. App. 2006), set out the pleading requirements for claims of ineffective assistance of counsel as follows:

>       "To sufficiently plead an allegation of ineffective
>       assistance of counsel, a Rule 32 petitioner not only must
>       'identify the [specific] acts or omissions of counsel that are
>       alleged not to have been the result of reasonable professional

judgment,' Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."

See also Daniel v. State, 86 So. 3d 405, 416 (Ala. Crim. App. 2011). With these principles in mind, we address Wimbley's arguments concerning his ineffective-assistance-of-counsel claims.

### I.A. Guilt-Phase Claims

### I.A.1.

Wimbley first contends that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when entering a not-guilty-by-reason-of-insanity [('NGRI')] plea without any good-faith basis to do so." (Wimbley's brief, p. 27.) Wimbley also argues, in passing, that the circuit court erred "in denying funding to look further into Wimbley's mental state." (Wimbley's brief, p. 28.) Wimbley's arguments on appeal do not entitle him to relief.

In his amended petition, Wimbley alleged that his counsel were ineffective when they "filed a pretrial motion to have [him] evaluated for

16

any psychological disorder. ... to support their assertion that [he] was not guilty by reason of mental defect or disorder." (C. 307.) Wimbley alleged that his counsel made this decision "without having secured any of Mr. Wimbley's mental-health records," "without talking with any mental-health professionals," "without [his] consent or knowledge," and "without conducting any fact investigation into [his] background." (C. 307.) According to Wimbley, his counsels' decision "allowed the State to use their own psychologist to interview and evaluate [him]," showing the State that he "suffered from a personality disorder with antisocial features." (C. 308.) Wimbley alleged that he was prejudiced by his counsels' decision to have him evaluated for the following reasons:

> "Mr. Wimbley was found to be antisocial by the expert that was appointed by the state to test him for competency and NGRI. While [the expert] did not testify in the penalty phase, it is clear that the State took this report to heart when it did not offer a plea bargain to [him].

> "The State's report diagnosing Mr. Wimbley with Anti-Social Personality Disorder was in the trial court's record for consideration when passing Mr. Wimbley's final sentence.

> "Had counsel investigated Mr. Wimbley's mental state before entering the NGRI plea, they would have learned that [he] is not insane and is not antisocial. They would have then known not to expose [him] to a mental examination that nearly always provides a diagnosis of Antisocial Personality Disorder (ASPD) for the State to use.

"And had counsel not entered the NGRI plea and exposed Mr. Wimbley to a state mental examination, the trial court would not have been exposed to an erroneous ASPD diagnosis for consideration during sentencing."

(C. 310-11 (paragraph numbering omitted).)

The circuit court summarily dismissed this claim as insufficiently pleaded because Wimbley failed "to proffer in his petition what specific mental health records his trial counsel failed to obtain or what information was contained in those records that would have convinced his counsel not to request a pre-trial evaluation," failed "to state what mental health professionals his counsel should have consulted or what the findings of those professionals would have been," failed "to state what information concerning his background would have caused his counsel to deem a pretrial evaluation unnecessary," failed "to point to anything in the record showing that, without [the expert's] report, the State would have extended him a plea bargain," and failed "to point to anywhere in the record to support his assertion that [the expert's] report was considered by [the circuit] in sentencing." (C. 580-81.)

The circuit court also summarily dismissed this claim as being without merit because "Wimbley's trial counsel could not have known the

extent of any mental-health problems Wimbley may have suffered without an evaluation, the decision by his counsel to ask for an evaluation was sensible and fell within the wide range of reasonably competent assistance." (C. 581.) The circuit court continued:

> "After considering the grounds in [trial] counsel's motion for a pre-trial mental evaluation, this Court concluded that 'reasonable grounds exist to question the Defendant's competency.' ([Record in CR-11-0076,] C. 152.) Further, Wimbley's contention that there were no reasonable grounds for a competency evaluation is directly contradicted by other assertions in his petition. Wimbley asserts in his petition that he 'is severely mentally ill,' (AP 140), that '[t]here was a great deal of mental illness' in his family, that he 'certainly inherited some of the mental-health issues from his father,' and that he 'was susceptible to depression and on one occasion tried to commit suicide.' (AP 107-108.)"

(C. 581-82.)

On appeal, Wimbley briefly realleges the claims that he made in his Rule 32 petition about his counsels' decision to have him evaluated by a mental-health professional and makes the following argument:

> "The lower court found that this claim was deficiently plead[ed]. (C. 581.) It further found that the ineffectiveness claims [were] without merit. (C. 582.) The trial court abused its discretion in finding this claim without merit and in denying funding to look further into Wimbley's mental state. Mr. Wimbley met his burden of pleading with the sufficiency and specificity required by Bui[ v. State, 717 So. 2d 6 (Ala. Crim. App. 1997),] and Rules 32.3 and 32.6(b), [Ala. R. Crim.

19

> P.,] and, as such, the circuit court erred in summarily dismissing this claim."

(Wimbley's brief, p. 28.)

Wimbley's argument on appeal does not satisfy the requirements of Rule 28(a)(10), Ala. R. App. P., which requires, in relevant part, that an argument in a brief include "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Although Wimbley reasserts the allegations he raised in his Rule 32 petition, points out that the circuit court dismissed this claim of ineffective assistance of counsel, and argues that the circuit court's decision was incorrect because he "met his burden of pleading," Wimbley makes no argument as to how he sufficiently pleaded his claims, and he cites no authority showing that his allegations were sufficient to survive summary dismissal. To be sure, Wimbley cites <u>Bui v. State</u>, 717 So. 2d 6 (Ala. Crim. App. 1997), and Rule 32.3 and Rule 32.6(b), Ala. R. Crim. P., but he does not explain how <u>Bui</u> or how Rule 32.3 and Rule 32.6(b) support his argument that he sufficiently pleaded this claim of ineffective assistance of counsel. Merely citing a rule of procedure or "citing a case

20

with no discussion as to its relevance is insufficient to satisfy Rule 28(a)(10)." Hodges v. State, 926 So. 2d 1060, 1075 (Ala. Crim. App. 2005).

What is more, although Wimbley argues that the circuit court "erred in summarily dismissing this claim" (Wimbley's brief, p. 28), Wimbley makes no argument on appeal as to why the circuit court's summary dismissal of this claim was incorrect. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016); Bryant v. State, 181 So. 3d 1087, 1118-19 (Ala. Crim. App. 2011); and Taylor v. State, 157 So. 3d 131, 142-45 (Ala. Crim. App. 2010)." Woodward v. State, 276 So. 3d 713, 746 (Ala. Crim. App. 2018). Even so, the circuit court properly dismissed Wimbley's claim as insufficiently pleaded and as without merit.

"The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one," requiring the petitioner to set out the "full factual basis" for his claim. Hyde, 950 So. 2d at 356. To sufficiently plead a claim of ineffective assistance of counsel, a petitioner must plead the full factual basis of both the performance and prejudice prongs of Strickland.

As to the performance prong of <u>Strickland</u>, Wimbley alleged that his counsel were ineffective when they "filed a pretrial motion to have [him] evaluated for any psychological disorder. ... to support their assertion that [he] was not guilty by reason of mental defect or disorder." (C. 307.) According to Wimbley, his counsel should not have made such a motion "without having secured any of Mr. Wimbley's mental-health records," "without talking with any mental-health professionals," "without [Wimbley's] consent or knowledge," and "without conducting any fact investigation into [his] background." (C. 307.) But as the circuit court noted in its order dismissing this claim, Wimbley did not allege any facts as to what mental-health records his counsel should have examined, he did not allege the name of any mental-health professional his counsel should have talked to, he did not allege that he did not actually consent to the mental evaluation, and he did not allege what aspects of Wimbley's background his counsel should have investigated (or who they would have talked to to glean this information).

As to the prejudice prong of <u>Strickland</u>, Wimbley alleged that, by requesting a mental evaluation, counsel informed the State and the circuit court that Wimbley had been diagnosed with "Anti-Social

Personality Disorder." (C. 310.) Wimbley claimed "that the State took this report to heart when it did not offer a plea bargain to [him]," and it "exposed" the trial court "to an erroneous ASPD diagnosis for consideration during sentencing." (C. 310-11.) But as the circuit court correctly found, Wimbley failed to allege that the State would have actually "extended him a plea bargain" had the evaluation not occurred, and he failed to plead any facts showing "that [the expert's] report was considered by this Court in sentencing." (C. 580-81.) At best, Wimbley's assertion of prejudice as a result of his counsels' actions is speculative, and "'[s]peculation is not sufficient to satisfy a Rule 32 petitioner's burden of pleading.' Mashburn v. State, 148 So. 3d 1094, 1125 (Ala. Crim. App. 2013)." Brooks v. State, 340 So. 3d 410, 474 (Ala. Crim. App. 2020).

Additionally, Wimbley's claim is without merit because his allegations that his counsel moved for a pretrial mental-health evaluation without conducting an investigation into Wimbley's mental-health background is clearly refuted by the record on direct appeal. See Yeomans v. State, 195 So. 3d 1018, 1031 (Ala. Crim. App. 2013) ("Thus,

23

the record on direct appeal refutes this claim, and the circuit court did not err in summarily disposing of it. Rule 32.7(d), Ala. R. Crim. P.").

Indeed, the record on direct appeal shows that, before his arraignment, Wimbley's counsel filed a "Motion for Hearing to Determine that Defendant is Incompetent to Stand Trial," in which Wimbley's counsel alleged the following:

> "[Wimbley] has a history of mental illness and low functioning intellect that renders him incompetent to stand trial. In most of his conversations with undersigned counsel, [Wimbley] has at times been incomprehensible and has had the inability to rationally communicate with counsel. In school, [Wimbley] struggled with all academic subjects, especially reading and comprehension. [Wimbley] had had difficulty following even simple instructions. Further, [Wimbley] has shown limited comprehension of the nature or significance of the courtroom. In light of [Wimbley's] academic and medical history, and because he is not able to understand the trial proceedings or materially assist his attorney in his defense, he is entitled to a hearing to determine whether he is competent to stand trial."

(Record in CR-11-0076, C. 176-77.)

In other words, before his counsel moved the circuit court for a pretrial mental-health examination, Wimbley's counsel clearly investigated Wimbley's history of mental-health issues and spoke with Wimbley before filing such a motion. Because the record on direct appeal shows that Wimbley's counsel did conduct an investigation into

24

Wimbley's mental health before they filed a motion for a pretrial mental-health examination, the circuit court did not err in summarily dismissing Wimbley's claim to the contrary.

Moreover, the record on direct appeal shows that Wimbley's trial counsels' actions were reasonable under the circumstances. When this Court examines a claim of ineffective assistance of counsel, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Here, based on Wimbley's allegations in his Rule 32 petition and the record before this Court in Wimbley's direct appeal, his counsels' decision to request a pretrial mental-health evaluation was certainly reasonable. As set out above, Wimbley's counsel consulted with Wimbley before his arraignment and found that those conversations were, at times, "incomprehensible" and that Wimbley struggled to communicate with his trial counsel. Based on their interactions with Wimbley and on Wimbley's mental-health history, Wimbley's counsel asked the circuit court to determine whether he was competent to stand trial. At his arraignment, Wimbley pleaded not guilty and not guilty be reasons of mental disease or defect. (Record in CR-11-0076, R. 20.) Thereafter, the State moved the circuit court for a mental

evaluation and asked that Dr. Doug McKeown be appointed by the court to evaluate Wimbley because "[h]e has a contract with the State to do these." (Record in CR-11-0076, R. 21.) Wimbley's counsel agreed that a mental-health evaluation needed to be conducted and asked the circuit court to provide him $7,500 to have his own mental-health expert, Dr. Karen Salekin, evaluate Wimbley. (Record in CR-11-0076, R. 21.) The circuit court found that it was "appropriate" to grant the motions for mental-health evaluations, and it appointed both Dr. McKeown and Dr. Salekin to evaluate Wimbley.

Because counsel based their decision to move for a pretrial mental-health evaluation and to enter a plea of not guilty and not guilty by reason of mental disease or defect based on their observations of Wimbley through their conversations with him[3] and based on Wimbley's mental-

---

[3]In short, Wimbley's Rule 32 counsel claims that Wimbley's trial counsel were ineffective for asking the circuit court to appoint a mental-health expert to evaluate Wimbley based on their conversations with him and based on Wimbley's mental-health history. Notably, Wimbley's Rule 32 counsel asked the circuit court for the same thing when they alleged in Wimbley's amended petition that Wimbley is "severely mentally ill," that he has been "mentally ill since he was a young child," and that "[o]ne need only spend a few hours with him to know he is suffering from mental illness." (C. 422.) In other words, Wimbley's Rule 32 counsel alleged that Wimbley's trial counsel were ineffective for making the same observations and the same request as his Rule 32 counsel.

26

health history, Wimbley's trial counsel acted reasonably when they requested that Wimbley be evaluated by a mental-health professional. Accordingly, the circuit court did not err when it summarily dismissed this claim.

Wimbley also argues, in passing, that the circuit court erred when it denied his postconviction request for "funding to look further into Wimbley's mental state." (Wimbley's brief, p. 28.) Wimbley's argument does not satisfy Rule 28(a)(10), Ala. R. App. P., because the argument is limited to the eight words listed above, he cites no authority showing that he is entitled to such funding, and he makes no argument that the circuit court's decision was incorrect. Thus, Wimbley has waived this claim.

### I.A.2.

Next, Wimbley contends that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to the State's improper characterizations of its burden of proof during voir dire." (Wimbley's brief, p. 28.) Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that "throughout [Wimbley's] trial, the prosecutor misstated the law and erroneously

argued that a capital murder conviction could be based upon an unintentional killing." (C. 313.) Wimbley said that the prosecutor "incorrectly argued to each panel of the venire that an unintentional killing during a robbery would normally qualify as capital murder" by presenting a hypothetical example of an unintentional killing during a robbery and claiming that it would be "capital murder under the law," and contrasting that hypothetical "with the charges against Mr. Wimbley, arguing that Mr. Wimbley's offense was a more severe form of capital murder because it included the intent to kill." (C. 313-14.) Wimbley alleged that his counsel were ineffective because they did not object to the prosecutor's remarks and that their failure to do so prejudiced him because "the State's high burden of proof was their central defense during the culpability phase." (C. 317.) The circuit court summarily dismissed this claim because "Wimbley raised the issue underlying this ineffectiveness claim on direct appeal," and this Court, although concluding that the prosecutor's remarks were erroneous, held that "'any error in the prosecutor's statement was harmless.'" (C. 583 (quoting Wimbley, 191 So. 3d at 229).) We agree with the circuit court.

28

On direct appeal, Wimbley argued that "the prosecutor misstated the law and misled the jury by stating that an unintentional murder could rise to the level of capital murder." Wimbley, 191 So. 3d at 228. This Court, reviewing the argument for plain error under Rule 45A, Ala. R. App. P., explained:

"The record demonstrates that, during jury selection, the prosecutor presented panels of the venire a factual scenario of someone entering a convenience store with the intent to rob the store and who, because of nervousness, fires a gun and kills someone. The prosecutor asserted that such a scenario would be capital murder.

"During penalty-phase closing argument, the prosecutor reminded the jury:

"'I talked to some of y'all in voir dire about different ways that a person can be convicted of capital murder and murder during the course of a robbery. I talked to you about how the guy that walks in the 7-11 [convenience store] and is nervous, and he pulls a gun out, he's waving the gun up in the air, the gun accidentally goes off and kills somebody at the fountain machine. And then he robs store.

"'Well, ladies and gentlemen, under our law that's capital murder. That's murder in the course of a robbery. And in that case life without the possibility of parole might be the proper punishment. But that is not this case. That is totally different. And in this case the crime was planned, premeditated.'

29

"(R. 1073.)"

<u>Wimbley</u>, 191 So. 3d at 228. This Court concluded that the prosecutor's remarks "were incorrect," but nonetheless held that "any error in the prosecutor's statement was harmless." <u>Id.</u> At 229-30.

This Court's holding that the prosecutor's remarks were harmless forecloses any finding that Wimbley's counsels' failure to object to the State's "improper characterizations of its burden of proof during voir dire" prejudiced him under <u>Strickland</u>. <u>See, e.g.</u>, <u>Smith v. State</u>, 71 So. 3d 12, 26 (Ala. Crim. App. 2008) (holding that, "[b]ecause we found that the substantive issue underlying this claim was at best harmless, Smith cannot meet the prejudice prong of the <u>Strickland</u> test"); <u>see also</u> <u>Gaddy v. State</u>, 952 So. 2d 1149, 1160 (Ala. Crim. App. 2006) ("Harmless error does not rise to the level of prejudice required to satisfy the <u>Strickland</u> test."). Because Wimbley cannot establish prejudice under <u>Strickland</u>, the circuit court properly dismissed this claim.

## I.A.3.

Wimbley contends that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to the State securing a promise [during voir

dire] from the potential jurors to not consider youth as a mitigating factor." (Wimbley's brief, p. 30.)  Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that his counsel were ineffective for failing to object to the prosecutor's repeated argument that Wimbley's "age should not be considered at all in sentencing."  (C. 319.) Wimbley claimed that "the prosecutor asked all of the jurors to affirm during voir dire that a young person is just as culpable as an older person" and then, "in closing arguments, the prosecutor held the jurors to their commitment not to consider Mr. Wimbley's age" when the prosecutor argued as follows:

> "'He tells you that you should take into account his age, the age of this defendant.  I asked everyone of you in voir dire if you felt a twenty-one, twenty-two-year-old man should be treated any differently under the law than someone who's forty-two or sixty-two.  All of you indicated to me that shouldn't make a difference.  He's just as responsible for his actions [as] anyone else should be.'"

(C. 319 (quoting Record in CR-11-0076, R. 1084).)  Wimbley claimed that his counsel failed to object to this argument and that their failure to object prejudiced him because "counsel could not present the youth of his client as a persuasive mitigating factor, even though trial counsel listed it as an anticipated mitigating circumstance."  (C. 323.)

31

The circuit court summarily dismissed this claim because "Wimbley raised the issue underlying this ineffectiveness claim on direct appeal," and this Court held that the complained-of comments "'are appropriate'" and that "'Wimbley has not shown that any error, much less plain error, resulted from the prosecutor's statement.'" (C. 585-86 (quoting Wimbley, 191 So. 2d at 240).) We agree with the circuit court.

On direct appeal, Wimbley argued that the State made improper comments about Wimbley's age and that it "'asked all of the jurors to affirm during voir dire that a young person is just as culpable as an older person .... Then, in closing arguments, the prosecutor held the jurors to their commitment not to consider Mr. Wimbley's age.'" Wimbley, 191 So. 3d at 239 (quoting (Wimbley's brief, pp. 96-97)). The Court rejected Wimbley's argument, finding that "the prosecutor merely argued that the jury should not give any mitigating weight to Wimbley's age at the time of the offense," that the argument was proper, and that "Wimbley has not shown that any error, much less plain error, resulted from the prosecutor's statement." Wimbley, 191 So. 3d at 240.

Because this Court concluded that the State's argument was proper, "trial counsel were clearly not ineffective for not objecting to it.

32

'[C]ounsel could not be ineffective for failing to raise a baseless objection.' Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001)." Stanley v. State, 335 So. 3d 1, 54 (Ala. Crim. App. 2020). Accordingly, the circuit court did not err when it summarily dismissed this claim.

### I.A.4.

Wimbley next argues that the circuit court erred when it summarily dismissed his four claims that his counsel "provided ineffective assistance when failing to strike multiple biased jurors for cause." (Wimbley's brief, p. 32.) Wimbley's arguments are without merit.

First, Wimbley argues that the circuit court erred when it dismissed his claim of ineffective assistance of counsel when his counsel failed to strike for cause juror W.D., who he alleged in his amended petition "was responsible for servicing Mr. Wheat's life insurance policy" and who he alleged "continued to work with Mr. Wheat's family members regarding the policy after Mr. Wheat's death." (C. 324.) The circuit court dismissed this claim because Wimbley raised the issue underlying this claim of ineffective assistance of counsel on direct appeal, and this Court held that the circuit court "'did not commit error in not removing W.D.

33

for cause.'" (C. 587 (quoting <u>Wimbley</u>, 191 So. 3d at 216).) We agree with the circuit court.

On direct appeal, Wimbley argued that the trial court erred when it did not remove W.D. for cause because of W.D.'s connection with Wheat's life-insurance policy and his connection with Wheat's family. This Court rejected Wimbley's argument, explaining:

> "W.D. informed the circuit court that he knew Wheat from going into Harris Grocery and because he had 'serviced [Wheat's insurance] account a couple of times.' (R. 109.) W.D. also said that he had helped Wheat's family members after Wheat's death but that he would 'be able to render a fair and impartial verdict' if he were selected to serve on the jury. (R. 308-09.)
>
> "W.D. indicated that he could disregard his association with Wheat and Wheat's family and render a fair verdict based on the evidence and law that would be presented in the case. Therefore, the circuit court did not commit error in not removing W.D. for cause."

<u>Wimbley</u>, 191 So. 3d at 216.

Because this Court concluded on direct appeal that W.D.'s connection with Wheat's life-insurance policy and with Wheat's family did not mandate his removal for cause, Wimbley's counsel was not ineffective for failing to move to strike W.D. for cause for those same reasons. <u>See</u> <u>Stanley</u>, 335 So. 3d at 54 (holding that counsel is not

34

ineffective for failing to raise a baseless objection). Accordingly, the circuit court did not err when it summarily dismissed this claim.

Second, Wimbley argues that the circuit court erred when it dismissed his claim that his counsel were ineffective for failing to strike for cause several jurors who had "close connections to employees of the prosecutor's office." (Wimbley's brief, p. 33.) In his amended petition, Wimbley alleged that prospective jurors C.B., F.B., A.D., W.D., R.G., L.H., H.J., and Wi.Wa.[4] "all had hired attorneys who now work at the

---

[4]In his amended petition, Wimbley cites page 519 from the reporter's transcript in CR-11-0076 to support his allegation that juror Wi.Wa. had hired an attorney who works at the prosecutor's office. That page of the reporter's transcript, however, shows that it was juror We.Wi., not juror Wi.Wa., who indicated that he had hired a person who works for the district attorney to represent him in the past, before the person was hired by the district attorney's office. To the extent that Wimbley alleged in his petition that his counsel were ineffective for failing to remove juror Wi.Wa. for cause because Wi.Wa. had hired someone who worked in the prosecutor's office to represent him in a legal matter, that claim is insufficiently pleaded. Indeed, although Wimbley alleged in his petition that juror Wi.Wa. "had ... hired [an] attorney[] who now work[s] at the prosecutor's office to represent [him] in a civil legal matter," Wimbley did not allege whom Wi.Wa. had allegedly hired or how Wi.Wa.'s business relationship with that attorney warranted his removal for cause. To the extent that Wimbley intended to allege in his amended petition, as he did on direct appeal, that it was juror We.Wi. who had previously hired a person who works in the prosecutor's office to represent him in a civil legal matter, that claim is without merit because Wimbley raised the argument underlying this claim of ineffective

prosecutor's office to represent them in civil legal matters such as divorce, child custody, adoption, estate planning, real estate and others." (C. 326.) Wimbley also alleged that K.J.F., R.J., T.T., J.T., and C.Y. "all had close family members who had hired members of the prosecutor's office to perform civil legal services." (C. 326.) The circuit court dismissed Wimbley's claims because Wimbley had raised the issues underlying these claims of ineffective assistance of counsel on direct appeal and this Court held that the circuit court did not commit any error when it did not remove these jurors for cause. We agree with the circuit court.

On direct appeal, Wimbley argued that C.B., F.B., A.D., W.D., R.G., L.H., H.J., We.Wi., K.J.F., R.J., T.T., J.T., and C.Y. should have been removed for cause as a result of their connections with employees in the district attorney's office either because they had hired an attorney who now works in the district attorney's office to represent them in a civil legal matter or because they were friends with or had worked with a member of the district attorney's staff. See Wimbley, 191 So. 3d at 217-19. This Court, reviewing Wimbley's arguments for plain error, rejected

---

assistance of counsel on direct appeal and this Court found that there was no error "when [the circuit court] did not remove We.Wi. for cause." Wimbley, 191 So. 3d at 219.

Wimbley's arguments as to each of the above-listed jurors and held that "the circuit court did not commit error, plain or otherwise," when it did not remove these jurors because of their connections with the employees in the district attorney's office. Id.

Because this Court rejected the arguments underlying Wimbley's claims of ineffective assistance of counsel as to striking for cause jurors C.B., F.B., A.D., W.D., R.G., L.H., H.J., We.Wi., K.J.F., R.J., T.T., J.T., and C.Y., Wimbley's counsel was not ineffective. See Stanley, 335 So. 3d at 54 (holding that counsel is not ineffective for failing to raise a baseless objection). Accordingly, the circuit court did not err when it summarily dismissed this claim.

Third, Wimbley argues that the circuit court erred when it summarily dismissed his claim that his counsel were ineffective for failing "to move to strike members of the venire with family ties to employees of the prosecutor's office (although not to the individual prosecutors trying the case)." (Wimbley's brief, p. 34.) In his amended petition, Wimbley alleged that his counsel should have moved to strike for cause J.B., L.B., C.B., S.G., and T.H. who, he said, "were all related to employees of the prosecutor's office by blood or marriage," and that,

37

"[a]lthough the kinships ties were not close enough to automatically disqualify them from service, counsel failed to question whether they could serve fairly." (C. 328.) The circuit court dismissed this claim because Wimbley raised the issue underlying this claim of ineffective assistance of counsel on direct appeal and this Court held that the circuit court "committed no error in leaving the above individuals on the venire." (C. 589 (citing Wimbley, 191 So. 3d at 220-21).) We agree with the circuit court.

On direct appeal, Wimbley argued that the circuit court erred because J.B., L.B., C.B., S.G., and T.H. should have been removed for cause due to family ties they had with employees of the district attorney's office. See Wimbley, 191 So. 3d at 220-21. This Court, reviewing Wimbley's argument for plain error, explained that § 12-16-150(4), Ala. Code 1975, "does not require the removal of veniremembers related to people employed by the prosecutor's office but not involved in the prosecution of the case on which the veniremember might sit." Id. This Court rejected Wimbley's arguments as to jurors J.B., L.B., C.B., S.G., and T.H., holding that the circuit court "did not commit error, plain or otherwise," when it did not remove them from the venire. Id.

Because this Court rejected the merits of the arguments underlying Wimbley's claims of ineffective assistance of counsel as to striking for cause jurors J.B., L.B., C.B., S.G., and T.H., Wimbley's counsel was not ineffective. See Stanley, 335 So. 3d at 54 (holding that counsel is not ineffective for failing to raise a baseless objection). Accordingly, the circuit court did not err when it summarily dismissed this claim.

Fourth, Wimbley argues that the circuit court erred when it dismissed his claim that his counsel were ineffective for failing "to move to strike venire members whose relationships with State witness Ferrell Grimes impaired their ability to serve." (Wimbley's brief, p. 34.) In his amended petition, Wimbley alleged that "[a]t least ten venire members knew Ferrell Grimes" and that, "[o]f these, [R.G.] seemed to have an especially close relationship with Mr. Grimes" because R.G. said on voir dire: "'I have known Mr. Ferrell my whole life. Our families were raised in Midway right beside each other. I have known him forever.'" (C. 328-29 (quoting the record in CR-11-0076, R. 318).) The circuit court rejected this claim because Wimbley raised the issue underlying this claim of ineffective assistance of counsel on direct appeal and this Court held that the circuit court "committed no error in leaving R.G. on the venire." (C.

589 (citing <u>Wimbley</u>, 191 So. 3d at 221-22).) We agree with the circuit court.

On direct appeal, Wimbley argued that "R.G. should have been removed for cause due to her relationship with Deputy Grimes." <u>Wimbley</u>, 191 So. 3d at 221. This Court rejected that claim as follows:

> "The record reflects that, during jury selection, R.G. stated that she had known Deputy Grimes throughout her life. She also stated that her acquaintanceship with Deputy Grimes would not cause her 'to be [un]able to render a fair and impartial verdict if [she was] selected' to be a juror. (R. 318.) Therefore, it was not error, plain or otherwise, for the circuit court to leave R.G. on the venire."

<u>Id.</u> at 221-22.

Because this Court rejected the merits of the argument underlying Wimbley's claim of ineffective assistance of counsel as to removing R.G. for cause, Wimbley's counsel was not ineffective. <u>See</u> <u>Stanley</u>, 335 So. 3d at 54 (holding that counsel is not ineffective for failing to raise a baseless objection). Accordingly, the circuit court did not err when it summarily dismissed this claim.[5]

---

[5]To the extent that Wimbley argues on appeal that the circuit court erred when it dismissed his claim that his counsel were ineffective for failing to move to strike the "at least ten venire members" who allegedly knew Grimes, the circuit court properly dismissed that claim because

Although the circuit court properly dismissed Wimbley's four claims of ineffective assistance of counsel because this Court addressed the issues underlying Wimbley's claims on direct appeal, Wimbley's claims of ineffective assistance of counsel also fail because he did not satisfy his burden of pleading all four of his claims. In his amended petition, Wimbley alleged facts as to why his counsel should have struck these jurors for cause, but he failed to explain with particularity as to how he was prejudiced by his counsels' alleged deficient performance. The totality of Wimbley's allegation of prejudice from his counsels' actions is as follows:

> "Counsel should have made strikes for cause as it was clear that these jurors could not be fair and impartial in hearing the evidence as it related to both culpability and sentencing.
>
> "Mr. Wimbley has the right to fair and impartial jury when considering the facts alleged in the culpability phase and the weighing of penalties in the sentencing phase."

---

Wimbley failed to identify, by name, any jurors other than R.G. who knew Grimes. Thus, Wimbley's claim was insufficiently pleaded. See, e.g., Washington v. State, 95 So. 3d 26, 64 (Ala. Crim. App. 2012) ("The circuit court correctly summarily dismissed this claim because Washington failed to identify specific jurors by name; he failed to plead what should have been done during voir dire examination; and he failed to plead how he was prejudiced by counsel's performance during the voir dire examination.").

41

(C. 330-31 (paragraph numbering omitted).) Wimbley's bare allegation that these jurors could not be fair and impartial is not sufficient to satisfy his heavy burden of sufficiently pleading his claims under Rule 32.3 and Rule 32.6(b), Ala. R. Crim. P. See Hyde, 950 So. 2d at 356.

Because this Court on direct appeal rejected the merits underlying Wimbley's claims of ineffective assistance of counsel and because Wimbley failed to sufficiently plead how he was prejudiced by his counsels' performance, the circuit court did not err when it summarily dismissed these claims of ineffective assistance of counsel.

## I.A.5.

Wimbley next argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to investigate an alternate suspect" -- namely, T.C. Reed III. (Wimbley's brief, p. 35.) Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that his counsel were ineffective when they failed to investigate Reed as a "more logical suspect in the crime." (C. 331.) According to Wimbley, Reed "was present at the scene of the crime," "knew Mr. Barnes," and "could have easily followed Messrs. Wimbley and Crayton to Mr. Barnes's house and hid the

42

instruments of the crime in his shed." (C. 331.) Wimbley alleged that his counsel never investigated Reed as an alternate suspect and failed to "ask any follow-up questions about [him] when trial testimony revealed him sitting at the murder scene, watching." (C. 332.) Wimbley alleged that his counsels' failure to investigate Reed as a suspect prejudiced him because, he said, "the case against [him] was wholly circumstantial," and if his counsel had investigated Reed "they would have learned that [he] had a violent criminal history," that he "was at the scene of the murder," that he knew Mr. Barnes ("the owner of the shed in which the instruments of the murder were discovered"), and that Reed "had the opportunity to place those instruments after simply following Mr. Crayton's car to Mr. Barnes'[s] house."[6] (C. 333-34.)

The circuit court summarily dismissed this claim, finding that it was insufficiently pleaded because Wimbley did not allege "what specific

---

[6]In his amended petition, Wimbley also alleged that his counsel "failed to investigate a person of interest who the local community had claimed was responsible for the shooting of Mr. Wheat." (C. 334-35.) Wimbley does not raise this argument on appeal. Thus, Wimbley has abandoned this claim, and this Court will not consider it. See Clark, 196 So. 3d at 299 ("Those claims Clark raised in his petition but does not argue on appeal are deemed abandoned and will not be considered by this Court.").

and admissible evidence his trial counsel would have discovered and presented at trial if they had investigated Reed that would have implicated him, directly or indirectly, in the victim's murder." (C. 590.) The circuit court also found that Wimbley's claim was without merit because this Court on direct appeal held that "'[t]he State's evidence, excluding Wimbley's confession, overwhelmingly established his guilt.'" (C. 591 (quoting Wimbley, 191 So. 2d at 208-09).) We agree with the circuit court.

Indeed, Wimbley in his claim that his trial counsel were ineffective when they failed to investigate Reed as a person who could have murdered Wheat and framed Wimbley and Crayton, fails to allege any facts showing whom his counsel could have discovered this information from, whether those unnamed people would have been willing to speak with Wimbley's counsel, and whether that information, as the circuit court correctly put it, "would have implicated [Reed], directly or indirectly, in the victim's murder." (C. 590.) In short, Wimbley's allegations in his amended petition establish nothing more than that, had his counsel investigated Reed as a suspect, they would have learned that Reed has a violent history, that he was present outside the grocery

44

store the day Wheat was murdered, and that he had the opportunity to frame Wimbley by hiding the murder weapon in Barnes's shed. Wimbley alleged nothing that would show that, had his counsel investigated Reed as a suspect, they would have discovered something that actually implicated Reed in Wheat's murder, and, in turn, exculpated Wimbley. Thus, the circuit court correctly found that this claim was insufficiently pleaded.

Moreover, Wimbley's claim is without merit because Wimbley's counsels' alleged decision not to investigate Reed as an alternate suspect to Wheat's murder must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Here, Wimbley cannot show that his counsel performed deficiently by not investigating Reed as a suspect in Wheat's murder because Wimbley admitted to law enforcement that before Crayton picked him up that day, he had mixed gasoline with a Fanta soft drink in a bottle, he took the bottle into Harris Grocery, shot Wheat, stole cash, and then poured the mixture in the bottle throughout the store. Wimbley also told law enforcement that he first shot Wheat in the arm and that he had poured the gasoline mixture on Wheat after he had shot him. Wimbley's counsel

was also aware of Wimbley's recorded statement to his mother, in which Wimbley admitted that what his codefendant told law enforcement had happened was true. (See Record in CR-11-0076, C. 569-75.) Because Wimbley admitted his involvement in Wheat's murder to law enforcement and in a recorded statement to his mother, his counsel certainly acted reasonably when they did not investigate Reed as an alternative suspect to Wheat's murder. See, e.g., Washington v. State, 95 So. 3d 26, 52 (Ala. Crim. App. 2012) (recognizing that "'[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions'") (quoting Strickland, 466 U.S. at 691). Accordingly, Wimbley is not entitled to any relief on this claim.

### I.A.6.

Wimbley next argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to investigate a crucial witness's motivations to falsify testimony against [him]." (Wimbley's brief, p. 36.) In his amended petition, Wimbley alleged that Barbara Washington "was a key witness for the State" who had "identified Mr. Wimbley as the man running from

the store and claimed to have known him since childhood." (C. 335.)

Wimbley claimed that

> "[u]pon information and belief, Ms. Washington had a boyfriend at the time of Mr. Wimbley's trial. That boyfriend had a pending criminal case in Washington County. He was incarcerated for that case. And that pending case was dismissed as a result of Ms. Washington testifying against Mr. Wimbley."

(C. 335 (emphasis added).) Wimbley further alleged that his counsel "never spoke with [Washington], and he never spoke with others about her," and "never asked the State for particularized discovery on her and her circumstances." (C. 336.) Wimbley alleged that, if his counsel had conducted such an investigation, they would have learned about Washington's boyfriend and that she "wanted to please the prosecution in an effort to have that boyfriend released from incarceration." (C. 337.) According to Wimbley, failing to investigate this information prejudiced him because it could have been used to impeach Washington and to show the jury that she "was not the neutral witness that the State presented." (C. 337-38.) The circuit court summarily dismissed this claim as insufficiently pleaded. We agree with the circuit court.

As set out above, Wimbley qualified his allegation that his counsel were ineffective for failing to investigate Washington's motivations to

47

testify falsely with the phrase that it was based "[u]pon information and belief." (C. 335.) This Court has held that "alleging 'upon information and belief' that something happened is nothing more than a speculative assertion, and '[s]peculation is not sufficient to satisfy a Rule 32 petitioner's burden of pleading.' Mashburn v. State, 148 So. 3d 1094, 1125 (Ala. Crim. App. 2013)." Brooks v. State, 340 So. 3d 410, 474 (Ala. Crim. App. 2020). What is more, as the circuit court correctly noted in its order summarily dismissing this claim:

> "Wimbley fails to plead in his petition how his counsel's investigation or cross-examination was deficient. He does not explain how his counsel could have known that Ms. Washington's boyfriend had a pending criminal charge or how they could have discovered the purported motivation behind her testimony. Wimbley also fails to identify Ms. Washington's alleged boyfriend by name, the specific crime for which he was supposedly charged, or any circumstances surrounding the resolution of his case. Additionally, Wimbley fails to allege in his petition what specific questions his counsel should have asked Ms. Washington, what her specific responses would have been, or how those responses would have been beneficial to his defense."

(C. 593-94.)

Finally, although Wimbley alleged that his counsel could have used the information about the alleged motivation behind Washington's testimony to impeach her and to show that she was not a "neutral

48

witness," Wimbley did not allege any facts to show that the result of the proceeding probably would have been different had his counsel impeached Washington's testimony, especially considering the fact that Wimbley confessed to law enforcement that he murdered Wheat.

Because Wimbley failed to sufficiently plead this claim, the circuit court did not err when it summarily dismissed it.

### I.A.7.

Wimbley argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to consult with expert witnesses and present those experts' testimony." (Wimbley's brief, p. 37.) According to Wimbley, if his counsel had "properly investigated, he would have hired" a false-confession expert, a torture and solitary-confinement expert, an arson expert, and a shoeprint expert. (Wimbley's brief, pp. 38-40.) Wimbley's argument is without merit.

In his amended petition, Wimbley raised the same allegations about his counsels' effectiveness in failing to hire certain expert witnesses. In so doing, Wimbley alleged that he "has contacted Richard Leo and his hourly rate is three hundred and fifty dollars an hour" and

he "cannot afford this rate"; that he "has contacted Stuart Grassian, who is an expert on the effects of solitary confinement on individuals" and his rate "is five hundred dollars an hour and he estimates at least ten hours of work" and he "cannot afford this hourly rate"; that he "has contacted John Lentini in Texas" whose hourly rate is "two hundred and fifty dollars an hour" and he "cannot afford the hourly rate"; and he "has contacted former F.B.I. analyst, William Bodziak" who "is willing to assist in this matter" but Wimbley "cannot afford his fee.[7]  (C. 340-44.) The circuit court summarily dismissed this claim as insufficiently pleaded.  (C. 594-95.)  We agree with the circuit court.

> "It is well settled that, to properly <u>plead</u> a claim that counsel were ineffective for failing to hire an expert witness, the petitioner must, among other things, identify by name the expert witness his counsel should have hired, set out the testimony that the named expert would have given, and plead that the named expert was both willing and available to testify at trial."

<u>Brooks</u>, 340 So. 3d at 437.

---

[7]In his amended petition, Wimbley lists Leo under the section titled "False-confession expert," he lists Lentini under the section titled "Arson Expert," and he lists Bodziak under the section titled "Shoemark-comparison expert."  (C. 340-44.)

Here, although Wimbley identified certain experts by name that he had consulted with, Wimbley neither alleged what those experts would have testified to (or, importantly, that their testimony would have actually benefitted him), nor did he allege that those expert witnesses would have been both willing and available to testify at his trial. Accordingly, the circuit court did not err when it summarily dismissed this claim as insufficiently pleaded. See, e.g., Washington v. State, 95 So. 3d 26, 64 (Ala. Crim. App. 2012) (holding that a claim of ineffective assistance of counsel for failing to hire an expert witness was insufficiently pleaded when Washington failed to set out the content of the expert's testimony).

## I.A.8.

Wimbley argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to the State's expert testimony that [he] was guilty of arson." (Wimbley's brief, p. 40.) Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that his counsel were ineffective when they failed to object to "the testimony of Gary Cartee, a

deputy State Fire Marshall [sic]." (C. 347.) According to Wimbley, Cartee testified that the fire at Harris Grocery "'was intentionally set, it was incendiary'" (C. 348 (quoting Record in CR-11-0076, R. 799)), and that the charring that was present indicated arson. (C. 349.) Wimbley alleged that this testimony "does not constitute an admissible expert opinion as to whether the factual predicate of arson exists," "constitutes the legal conclusion that arson has been committed," and "usurped the role of the jury by making the very factual findings required for a conviction." (C. 349.) The circuit court summarily dismissed this claim because Wimbley had raised the issue underlying this claim of ineffective assistance of counsel on direct appeal and this Court held that "there was no error, much less plain error, in the admission of [the State expert's] testimony[.]" Wimbley, 191 So. 3d at 233. We agree with the circuit court.

On direct appeal, Wimbley argued that the circuit court erred when it allowed Cartee "'to invade the province of the jury on the question of whether Mr. Wimbley was guilty of the arson with which he was charged.'" Wimbley, 191 So. 3d at 232 (quoting Wimbley's brief, p. 72). This Court, reviewing Wimbley's argument for plain error, held that

"there was no error, much less plain error, in the admission of Cartee's testimony." Id. at 233. In the present appeal, Wimbley again argues that his counsel were ineffective because they should have objected to Cartee's testimony on the grounds that it "invad[ed] the province of the jury" by allowing into evidence Cartee's "ultimate opinion that an arson occurred." (Wimbley's brief, pp. 40, 41.)

Because this Court on direct appeal concluded that Cartee's testimony was proper, Wimbley's "trial counsel were clearly not ineffective for not objecting to it. '[C]ounsel could not be ineffective for failing to raise a baseless objection.' Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001)." Stanley, 335 So. 3d at 54. Accordingly, the circuit court did not err when it summarily dismissed this claim.

### I.A.9.

Wimbley argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to the State's expert's introduction of an unreliable scientific opinion about the presence of gasoline on Mr. Wimbley's hands and personal effects." (Wimbley's brief, p. 41.) Wimbley is not entitled to any relief on this argument for two reasons.

First, Wimbley's argument on appeal does not satisfy Rule 28(a)(10), Ala. R. App. P., which requires that an argument include "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." In raising his argument on appeal, Wimbley reasserts the allegations he raised in his amended Rule 32 petition and explains that "[t]his claim was denied by the trial court." (Wimbley's brief, p. 42.) But Wimbley makes no argument on appeal as to why the circuit court's summary dismissal of this claim was incorrect. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016)." Woodward v. State, 276 So. 3d 713, 746 (Ala. Crim. App. 2018).

Second, Wimbley's argument is without merit. In his amended petition, Wimbley alleged that his counsel were ineffective when they failed to "object to unreliable expert testimony when allowing the State's expert witness to offer an opinion regarding the presence of gasoline on Mr. Wimbley's hands and person[al] effects ... that was admittedly

foreclosed by the scientific tests and principles on which the State's expert was qualified to opine." (C. 353.) According to Wimbley, the State's arson expert, Sharee Wells, testified that "she could not establish the presence of gasoline on Mr. Wimbley's person, nor on his personal effects, 'based upon the criteria that must be met for some substance to be considered gasoline.' (R. 864.)" (C. 354.) But Wells also testified "that despite her inability to satisfy the criteria adopted by the Alabama Department of Forensic Sciences and the prevailing scientific standards when testing liquid samples from Mr. Wimbley's hands and other personal effects, it was her opinion that 'there is a trace amount of gasoline present in those items.'" (C. 352.) Wimbley alleged that this testimony was inadmissible and that his counsel should have objected to it. Wimbley claimed that this prejudiced him because,

> "[h]ad counsel objected to keep this unreliable opinion, the State would have been unable to link Mr. Wimbley to the crime using physical evidence.
>
> "But because counsel did not object, the jury was left with the impression that unchallenged scientific evidence showed Mr. Wimbley did pour gasoline on the day of the murder."

(C. 359 (paragraph numbering omitted).)

The circuit court summarily dismissed this claim because "Wimbley raised the issue underlying this ineffectiveness claim on direct appeal" and this Court held that there was no error in the admission of the complained-of testimony. (C. 597.) We agree with the circuit court.

On direct appeal, Wimbley argued that the circuit court erred when it allowed Wells "'to offer an opinion regarding the presence of gasoline on Mr. Wimbley's hands and personal effects ... that was admittedly foreclosed by the scientific tests and principles on which the State's expert was qualified to opine.'" Wimbley, 191 So. 3d at 234 (quoting (Wimbley's brief, p. 77)). This Court reviewed Wimbley's argument for plain error and concluded that "[t]here was no error, much less plain error, that resulted from Wells's testimony." Id. at 235.

Because this Court on direct appeal concluded that Wells's testimony was proper, Wimbley's "trial counsel were clearly not ineffective for not objecting to it. '[C]ounsel could not be ineffective for failing to raise a baseless objection.' Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001)." Stanley, 335 So. 3d at 54. Accordingly, the circuit court did not err when it summarily dismissed this claim.

## I.A.10.

Wimbley next argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to multiple hearsay statements from key State witnesses" -- namely, "Joe Barnes[8] and Ira Roberts, who explained that they had heard from other people that Mr. Wimbley and Juan Crayton played a role in [Wheat's] murder." (Wimbley's brief, p. 42.) Wimbley is not entitled to any relief on this argument.

In his amended petition, Wimbley alleged that his trial counsel were ineffective "when they failed to object to multiple hearsay statements from key State witnesses" -- namely, Barnes and Roberts. (C. 359-60.) Wimbley claimed that Barnes and Roberts testified "that they had heard from other people that Mr. Wimbley and Juan Crayton played a role in the victim's murder." (C. 360.) Wimbley said that this testimony was hearsay, that it did not fall under any exception to the hearsay rule, and that his counsel failed to object to this hearsay testimony. (C. 362-

---

[8]Earnest Lee Barnes, who testified at Wimbley's trial, also goes by the name of "Joe" Barnes. (Record in CR-11-0076, R. 723.) In his amended petition, Wimbley uses the names Joe Barnes and Earnest Lee Barnes interchangeably to refer to the same person.

65.) Wimbley further alleged that his counsels' failure to object to this hearsay testimony prejudiced him. (C. 365-66.) The circuit court summarily dismissed this claim because "Wimbley raised the issues underlying these ineffectiveness claims on direct appeal" and this Court found that there was no error in the admission of these statements. (C. 598.) We agree with the circuit court.

On direct appeal, Wimbley argued that the circuit court erred "by admitting hearsay testimony" from Barnes and Roberts. Wimbley, 191 So. 3d at 235. This Court reviewed Wimbley's argument for plain error and concluded:

> "The record demonstrates that none of the statements relayed by Roberts and Barnes was offered to prove the truth of the matter asserted. Rather, they were offered to explain the subsequent conduct of the hearer of the statement, i.e., they were offered to explain why Roberts called Barnes and why Barnes dropped off Crayton and Wimbley and went to the police. Accordingly, no error, much less plain error, resulted from the admission of this testimony."

Wimbley, 191 So. 3d at 235-36.

Because this Court on direct appeal concluded that the testimony from Barnes and Roberts was appropriate, Wimbley's "trial counsel were clearly not ineffective for not objecting to it. '[C]ounsel could not be ineffective for failing to raise a baseless objection.' Bearden v. State, 825

So. 2d 868, 872 (Ala. Crim. App. 2001)." Stanley, 335 So. 3d at 54.

Accordingly, the circuit court did not err when it summarily dismissed

this claim.

### I.A.11.

Wimbley argues that the circuit court erred when it summarily

dismissed his claim that his counsel "provided ineffective assistance

when they failed to emphasize in argument that the State's witnesses did

not testify that [he] smelled like gasoline after allegedly pouring gasoline

over the decedent and his story [sic]." (Wimbley's brief, p. 44.) The

totality of this argument on appeal is as follows:

> "Counsel failed to capitalize on the fact that the first
> person to arrest Mr. Wimbley did not smell gasoline on him.
> (R. 833-834.) Counsel failed to capitalize on the fact that the
> clothes taken from Mr. Wimbley did not smell like gasoline.
> (R. 827, 703.) Reasonably competent counsel must recognize
> helpful facts to use in their defense theory. U.S. Const. amend
> VI, XIV. See Foster v. Lockhart, 9 F.3d 722, 724, 726 (8th Cir.
> 1993) (counsel ineffective when failing to assert petitioner's
> impotency as part of an alibi defense to sex-assault charges).
> The trial court found this claim was deficiently plead and
> without merit. (C. 599-600.) Mr. Wimbley met his burden of
> pleading with the sufficiency and specificity required by Bui
> and Rules 32.3 and 32.6(b), and, as such, the circuit court
> erred in summarily dismissing this claim."

(Wimbley's brief, pp. 44-45.) This argument does not satisfy Rule

28(a)(10), Ala. R. App. P.

Indeed, Wimbley's argument on appeal copies verbatim the allegations and authority that he raised in his amended Rule 32 petition. (Compare C. 366-64 with Wimbley's brief, pp. 44-45.) Although Wimbley notes that the circuit court summarily dismissed this claim as insufficiently pleaded and argues that his claim was sufficiently pleaded, Wimbley makes no argument on appeal explaining how his claim was sufficiently pleaded and he makes no argument and cites no authority as to why the circuit court's summary dismissal of this claim was incorrect. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016)." Woodward, 276 So. 3d at 746.

Even if we were to consider it, however, Wimbley's argument is without merit. Here, the circuit court correctly concluded that Wimbley's claim was insufficiently pleaded. In his amended petition, Wimbley made general allegations that his counsel were ineffective because they "failed to capitalize" on the fact that no one testified that they smelled gasoline on Wimbley or on Wimbley's clothes when he was arrested. (C. 366.) Wimbley alleged that, if he had "used gasoline to light the store on

fire after the murder, he would have reeked of gasoline." (C. 366.)

Wimbley claimed that,

"[h]ad trial counsel listened to witnesses' testimony reasonably well, counsel would have noticed this glaring defect in the State's case. Counsel could have tied these two events together that these clothes would have reeked of gasoline had Mr. Wimbley spilled gasoline all over the body and the grocery store. Counsel failed to bring this point to the attention of the jury.

"Had counsel done so, there is a reasonable probability that the outcome of his culpability phase would have been different."

(C. 368 (paragraph numbering omitted).)

To start, Wimbley failed to adequately plead facts showing how his counsels' performance was deficient for failing to "capitalize" on the lack of testimony regarding the smell of gasoline on Wimbley and his clothes when he was arrested. As the circuit court concluded when it summarily dismissed this claim, "Wimbley fails to plead in his petition specifically what his trial counsel should have done with the absence of testimony about a gasoline smell or explain why his counsel should have focused heavily on that smell." (C. 599.) This Court has explained that "'[a] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed

as of the time of counsel's conduct.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066." Reeves v. State, 226 So. 3d 711, 744 (Ala. Crim. App. 2016). Although Wimbley alleges that his counsel should have capitalized on the lack of testimony regarding the smell of gasoline on his person or clothes, he does not explain why his counsel was deficient in failing to explore that lack of testimony when his counsel (and the jury) were aware that Wimbley had admitted to law enforcement that he had mixed gasoline with a Fanta soft drink in a bottle, that he took the bottle into Harris Grocery, and that he shot Wheat, stole cash, and poured the mixture in the bottle throughout the store and on Wheat.

What is more, Wimbley's bare allegation that, if his trial counsel had brought to the jury's attention the absence of testimony concerning the smell of gasoline on his person or clothes, there is a reasonably probability that the result of his proceeding would have been different falls far short of the full-fact pleading requirements set out in Rule 32.3 and Rule 32.6(b) of demonstrating prejudice under Strickland. It is not even clear that an individual who allegedly poured gasoline at the scene would have gotten gasoline on himself or on his clothes. Wimbley failed to plead precisely how his counsel could have used this information to

affect the outcome of his trial when, as set out above, the jury was aware that Wimbley admitted to law enforcement that he had mixed gasoline with a Fanta soft drink in a bottle, that he took the bottle into Harris Grocery, and that he shot Wheat, stole cash, and poured the mixture in the bottle throughout the store and on Wheat.

Accordingly, the circuit court did not err when it summarily dismissed this claim.

I.A.12.

Wimbley contends that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to elicit the fact that [Wimbley] is scared of handguns." (Wimbley's brief, p. 45.) The totality of Wimbley's argument on appeal is as follows:

> "Mr. Wimbley fears handguns. Had trial counsel interviewed his mother, they would have learned that Ms. Wimbley kept a handgun in the glovebox of her vehicle. Ms. Wimbley also would have confirmed that Mr. Wimbley refused to reach into the glovebox of her vehicle because he was scared the handgun would discharge. Here, trial counsel did not investigate [Wimbley's] level of comfort with handguns. Trial counsel never asked his mother about Mr. Wimbley's comfort with handguns because they only tried to convince her that Mr. Wimbley was guilty. Therefore, counsel did not investigate Mr. Wimbley's case beyond looking at the State's discovery. The trial court found that this claim was

63

> deficiently plead[ed] (C. 601-02). Mr. Wimbley met his burden of pleading with the sufficiency and specificity required by Rules 32.3 and 32.6(b), and, as such, the circuit court erred in summarily dismissing this claim."

(Wimbley's brief, pp. 45-46.) Wimbley's argument does not satisfy Rule 28(a)(10), Ala. R. App. P.

Wimbley's argument on appeal copies verbatim the allegations raised in his amended petition. (Compare C. 368-69 with Wimbley's brief, pp. 45-46.) Wimbley cites no authority holding that his claim is sufficiently pleaded or showing that the circuit court erred when it summarily dismissed his claim. In fact, Wimbley makes no argument on appeal as to why the circuit court's summary dismissal of this claim was incorrect. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016); Bryant v. State, 181 So. 3d 1087, 1118-19 (Ala. Crim. App. 2011); and Taylor v. State, 157 So. 3d 131, 142-45 (Ala. Crim. App. 2010)." Woodward, 276 So. 3d at 746.

The circuit court correctly found Wimbley's claim to be insufficiently pleaded. Although Wimbley alleged that his counsel failed to investigate his fear of handguns, Wimbley did not allege any facts as

to why his trial counsels' failure was unreasonable given Wimbley's admission to law enforcement that he shot and killed Wheat. What is more, Wimbley's allegation of prejudice does not show how such information would have affected the outcome of his trial when the jury was aware that Wimbley admitted to law enforcement that he shot and killed Wheat.

Accordingly, the circuit court did not err when it summarily dismissed this claim.

### I.A.13.

Finally, Wimbley also argues that "[t]he cumulative prejudice of trial counsel's errors establishes <u>Strickland</u> prejudice during the culpability phase of [his] trial." (Wimbley's brief, p. 45.) The totality of Wimbley's argument on appeal is as follows:

> "The court found that this claim was without merit. (C. 603.) Mr. Wimbley would argue that this should have been sustained. The circuit court erred in summarily dismissing this claim."

(Wimbley's brief, p. 46.) Wimbley's three-sentence argument does not satisfy Rule 28(a)(10), Ala. R. App. P.

Although he argues that the circuit court erred when it summarily dismissed his cumulative-prejudice claim, Wimbley makes no argument

on appeal as to why the circuit court's summary dismissal of this claim was incorrect. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016)." Woodward, 276 So. 3d at 746. Even so, Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that the "cumulative prejudice of trial counsel's errors establishes Strickland prejudice during the culpability phase of Mr. Wimbley's trial." (C. 370.) According to Wimbley, "[r]eviewing courts must view the totality of prejudice arising from all of counsel's errors." (C. 371.) This Court has addressed the precise issue Wimbley raises here:

> "'"[The petitioner] ... contends that the allegations offered in support of a claim of ineffective assistance of counsel must be considered cumulatively, and he cites Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). However, this Court has noted: 'Other states and federal courts are not in agreement as to whether the "cumulative effect" analysis applies to Strickland claims'; this Court has also stated: 'We can find no case where Alabama appellate courts have applied the cumulative-

66

effect analysis to claims of ineffective assistance of counsel.' <u>Brooks v. State</u>, 929 So. 2d 491, 514 (Ala. Crim. App. 2005), quoted in <u>Scott v. State</u>, [262] So. 3d [1239, 1253] (Ala. Crim. App. 2010); see also <u>McNabb v. State</u>, 991 So. 2d 313, 332 (Ala. Crim. App. 2007); and <u>Hunt v. State</u>, 940 So. 2d 1041, 1071 (Ala. Crim. App. 2005).  More to the point, however, is the fact that even when a cumulative-effect analysis is considered, only claims that are properly pleaded and not otherwise due to be summarily dismissed are considered in that analysis.... Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate [the petitioner's] obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32.'

"'<u>Taylor v. State</u>, 157 So. 3d 131, 140 (Ala. Crim. App. 2010).'

"<u>White v. State</u>, [343] So. 3d [1150], [1176] (Ala. Crim. App. 2019).  Here, even '[i]f we were to evaluate the cumulative effect of the instances of alleged ineffective assistance of counsel, we would find that [the petitioner's] substantial rights had not been injuriously affected, because we have found no error in the instances argued in the petition.' <u>McNabb v. State</u>, 991 So. 2d 313, 332 (Ala. Crim. App. 2007)."

<u>Brooks v. State</u>, 340 So. 3d 410, 468-69 (Ala. Crim. App. 2020).  Thus,

with this Court having found only one error by the trial court, which this

Court concluded was harmless, Wimbley's cumulative-effect argument is inapplicable and he is not entitled to relief on this claim.

## I.B. Penalty Phase

Wimbley next argues that the circuit court erred when it summarily dismissed his claims of penalty-phase ineffective assistance of counsel. We address each argument in turn.

## I.B.1.

Wimbley first argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to investigate and present evidence of [his] nightmareish [sic] childhood and young adulthood." (Wimbley's brief, p. 46.) Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that his trial counsel were ineffective during the penalty phase of his trial because, he said, they "conducted no meaningful investigation into Mr. Wimbley's background" and, if they had done so, "basic criminal-records searches would have revealed the red flag that they needed to investigate the horrible, incestuous secrets in the Wimbley family." (C. 374.) Wimbley claimed that if his "counsel [had] spoken with multiple family members,

they would have learned that the Wimbley family hides multi-generational incest and children who are the product of incest. They would have learned that Mr. Wimbley was part of that family secret because a cousin raped him. This horrific sexual abuse has had a lasting and devastating effect on Mr. Wimbley's mental health." (C. 375.) Wimbley further alleged that, if his counsel had conducted a "minimal investigation," then they would have "uncovered the following facts to convince [his] jury to spare his life":

- Wimbley's grandfather, Reverend John Wimbley, Sr., although a well-respected pastor and a person held in high esteem in their small community, "repeatedly [had] sex with [his daughters] from a very early age." Wimbley's grandfather "impregnated a number of his daughters" and "some of the children did not survive." Wimbley's grandfather "confessed all his sins to Dewayne [Mitchell]" "when he was on his deathbed." (C. 383-84.)

- Wimbley was "repeatedly molested by his male cousins," which "shattered any view of normal sexuality" and "led to the unhealthy relationship he shared with his first wife." (C. 385.)

- Wimbley's father "was never a fixture" in Wimbley's life and his father blamed "the lack of relationship on [Wimbley]." Wimbley's father "ducked every opportunity to be a stable and loving part of [Wimbley's] life." Wimbley's father was also accused of "but never convicted of raping [Wimbley's] sister," and he did not

"protect [Wimbley] from his being molested by Wimbley['s] cousins." (C. 377-78.)

- Wimbley "was an excellent student succeeding in every aspect of his studies until Fifth Grade," and, thereafter, "his grades declined until he barely graduated from High School." Wimbley "cared nothing about school or about his life. He coasted thru his days without a care about what he would do or how he would support himself. His father was not there to provide him with a stern warning or any guidance. [Wimbley] made some bad decisions as a result." (C. 378.)

- Wimbley's mother was "an incredible force" in his life who did "her best to help [him] right the ship when he got in trouble," but his father's absence was too much to overcome and, as a result, Wimbley "has faltered and failed thus far." (C. 378.)

- Wimbley "did not date much in high school and was not very versed in the ways of love." After he graduated from high school, Wimbley married "an older, more experienced woman." Wimbley did not find out that his wife was "the mother of four small children" until "[h]e was sitting on the bed with his new wife, and there was a knock on the door" and "[f]our children walked in and asked, 'Is this our new daddy?'" (C. 378-79.)

- Wimbley "embraced the role as both father and husband" and he "secured two jobs in order to provide for the family." Wimbley was excited when he found out his wife was pregnant, but he later learned that "the child was not his son or daughter. Regardless, [he] vowed to raise him as his own." (C. 379.)

- Wimbley also "found out that [his wife] was addicted to crack cocaine," she "introduced [him] to this drug, and he became addicted to crack cocaine." (C. 379.)

70

- Wimbley's wife "was a prostitute" and "[e]arly in the marriage, he caught her having sex with another man." On several occasions, Wimbley caught her "having sex with men for money. On the last occasion, he saw her mid-coitus, and she laughed at his being the cuckold in their sham marriage." (C. 379-80.)

- Wimbley's wife also got him "to commit crimes on her behalf," including "writ[ing] a check for twelve-hundred dollars on [a] closed account" and "stealing an automobile that they took on a joyride." (C. 380.)

- After Wimbley caught his wife in bed with another man, Wimbley "went to a drug store" and purchased "one hundred and twenty Benadryl pills and a Sprite." Wimbley "walked down the street and decided to lay down in the street, waiting for death from the pills or from being run over by a car. The police fortunately intervened, and he was hospitalized." (C. 380.)

- After Wimbley and his wife separated, Wimbley "recognized his downward spiral and became determined to put his life back in order" and he was "accepted in Concordia College in Selma, Alabama" where he would be attending college with his friend, Juan Crayton." (C. 381.)

- Before Wheat was murdered, Wimbley "was freed from cocaine, although using marijuana and ecstasy on a much more frequent basis. But finally, he had a plan."

- On the day Wheat was murdered, Wimbley and Crayton "decided they wanted to smoke marijuana but [they] lack[ed] rolling papers." So the two decided to go to Wheat's store. When Wimbley went into the store, "[h]e saw [Wheat] on the floor. [Wimbley] went to see if he was alive. He stood next to the body and checked for

signs of life as best he could. Mr. Wheat was dead, and [Wimbley] was terrified." So Wimbley "ran out of the store and got into the car. Had he not been high on ecstasy he most likely would have called the police." Wimbley's being high on ecstasy "made him paranoid and unable to rationally think. He panicked and ran. One of the reasons he panicked was that he had warrants for a probation violation. A normal person not under the influence of ecstasy would not tie the two things together. [Wimbley] felt he would be blamed for this on top of the violation and he panicked." (C. 381-82.)

- Wimbley "told [Crayton] that they needed to leave quickly. They went to buy some weed as this experience had frightened the both of them. They went to Edward Barnes['s] house to buy weed. They stayed for a period of time and then [Crayton] took [Wimbley] to the Mobile bus station. He was arrested there, and his life changed forever." (C. 382.)

- "There was a great deal of mental illness and sadness that surrounded [Wimbley's] family." And "[o]ccasionally the mental illness in the Wimbley family was a byproduct of the incestuous relationships." After Wimbley's grandfather "had raped his daughter Catina, she fell into a deep depression and attempted suicide. Certainly, periods of mourning followed [Wimbley]'s aunts when they miscarried or still-birthed the genetically mutated children of an unholy act." (C. 385.)

- "Schizophrenia runs in the Wimbley family. Mr. Wimbley's family believes that [Wimbley's father] is schizophrenic. Mama Tiensy was diagnosed with the disorder and suffered for years from it. [Wimbley]'s cousins and other members of the family have mental-health issues as well." (C. 386.)

72

- Wimbley "certainly inherited some of the mental-health issues from his father. [Wimbley] was susceptible to depression and on one occasion tried to commit suicide." (C. 386.)

The circuit court summarily dismissed Wimbley's claim because, among other reasons, Wimbley's claim was insufficiently pleaded. (C. 604.) The circuit court explained:

"Although Wimbley pleads some details about his background that he contends his trial counsel should have introduced, he entirely fails to identify any witnesses in his petition who would have testified about each of the details about his life. He also fails to allege sufficient facts to show that these unnamed witnesses would have been available and willing to testify at his trial. Alabama caselaw mandates that such information must be included in the petition for a claim to be sufficiently pleaded."

(C. 604.) We agree with the circuit court.

In his brief on appeal, Wimbley again alleges that his counsel were ineffective "when they failed to investigate and present evidence of [his] nightmarish childhood and young adulthood." (Wimbley's brief, p. 46.) The circuit court correctly concluded that Wimbley's ineffective-assistance-of-counsel claim was insufficiently pleaded. As the circuit court noted, Wimbley failed "to identify any witnesses in his petition who would have testified about each of the details about his life" and he failed to plead "facts to show that these unnamed witnesses would have been

73

available and willing to testify at his trial." (C. 604.) Although Wimbley

mentioned some individuals by name in his laundry list of mitigation

evidence he says his counsel should have found and presented to the jury,

Wimbley's brief mention of people in his amended petition (for example,

Jacqueline Wimbley, John "Junior" Wimbley, Sharice, and Juan Crayton)

without also specifically alleging that those people would have actually

spoken with Wimbley's trial counsel and were both willing and able to

testify at Wimbley's trial does not satisfy the pleading requirements of

Rule 32.3 and Rule 32.6(b). We have explained:

> "'The "notice pleading" requirements relative to civil cases do not apply to Rule 32 proceedings. Unlike the general requirements related to civil cases, the pleading requirements for postconviction petitions are more stringent...."' Washington v. State, 95 So. 3d 26, 59 (Ala. Crim. App. 2012) (quoting Daniel v. State, 86 So. 3d 405, 410-11 (Ala. Crim. App. 2011)).

> > "'Rule 32.6(b), Ala. R. Crim. P., requires that full facts be pleaded in the petition if the petition is to survive summary dismissal. See Daniel [v. State, 86 So. 3d 405 (Ala. Crim. App. 2011)]. Thus, to satisfy the requirements for pleading as they relate to postconviction petitions, Washington was required to plead full facts to support each individual claim.'

> "Washington v. State, 95 So. 3d 26, 59 (Ala. Crim. App. 2012) (emphasis added). '[T]he claim of ineffective assistance of counsel is a general allegation that often consists of numerous

specific subcategories. Each subcategory is an independent claim that must be sufficiently pleaded.' <u>Coral v. State</u>, 900 So. 2d 1274, 1284 (Ala. Crim. App. 2004), overruled on other grounds, <u>Ex parte Jenkins</u>, 972 So. 2d 159 (Ala. 2005).

"Although White listed many individuals he said could have provided mitigation testimony, he failed to plead what each of those individuals could have presented. White also failed to specifically identify all of witnesses by name and instead identified them by their title, i.e., former coaches, teachers, or peers. 'Specificity in pleading requires that the petitioner state both the name and the evidence that was in the witness's possession that counsel should have discovered, but for counsel's ineffectiveness.' <u>Daniel v. State</u>, 86 So. 3d 405, 422 (Ala. Crim. App. 2011). 'Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis must be included in the petition itself.' <u>Hyde v. State</u>, 950 So. 2d at 356."

<u>White v. State</u>, 343 So. 3d 1150, 1168 (Ala. Crim. App. 2019).

Here, Wimbley pleaded details about events in his past and in his family history and, in so doing, mentioned some people by name. Wimbley, however, did not plead any facts that these people would have actually spoken with Wimbley's trial counsel (particularly when the mitigation evidence denigrates Wimbley's wife and would require family members to expose what Wimbley calls "horrible family secrets"). <u>See, e.g.</u>, <u>Daniel v. State</u>, 86 So. 3d 405, 416 (Ala. Crim. App. 2011) ("Assuming Daniel's assertions are true, Daniel failed to plead what evidence counsel could have uncovered that would have discredited Jackson's testimony or

that Jackson would have even spoken to Daniel's attorneys, given that Daniel's entire defense was that Jackson, and not he, committed the double homicide."). Additionally, Wimbley failed to plead any facts that these people would have actually been willing and able to testify during the penalty phase of his trial. See, e.g., Mashburn v. State, 148 So. 3d 1094, 1154 (Ala. Crim. App. 2013) ("Although Mashburn alleged that his counsel should have presented evidence that he comforted his nephews and was protective and caring to one his cousins, Mashburn did not allege that either his nephews or his cousin were willing and able to testify on his behalf, nor did he identify any other witnesses who would have testified to these facts."). Thus, the circuit court properly dismissed this claim.[9]

_____

[9]To the extent that Wimbley alleged that his counsel were ineffective for failing to conduct "basic criminal-records searches" and to the extent he realleges that claim on appeal, the circuit court properly dismissed that claim as insufficiently pleaded because Wimbley failed to identify with any specificity what (or whose) records his counsel should have found. Additionally, to the extent that Wimbley argues on appeal that the circuit court erred when it denied his request for funding, that claim is without merit. See, e.g., Boyd v. State, 913 So. 3d 1113, 1124 n. 5 (Ala. Crim. App. 2003) ("We note that this court in Williams v. State, 783 So. 2d 108, 113-14 (Ala. Crim. App. 2000), held that Rule 32 petitioners are not entitled to funds to hire experts to assist in postconviction litigation. See also McGahee v. State, 885 So. 2d 191, 229 (Ala. Crim. App. 2003).").

Moreover, the circuit court correctly concluded that Wimbley's allegations about his father being absent and his allegations about his wife were cumulative to evidence presented during the penalty phase of his trial. (C. 605.) The circuit court also correctly concluded that Wimbley's allegation that his counsel failed to present "mitigation" evidence of Wimbley's narrative of how he "simply wandered into the store while high on ecstasy" and discovered Wheat's body would not have been admissible. (C. 606 (citing Ex parte Lewis, 24 So. 3d 540, 543 (Ala. 2009) (holding that "residual doubt" evidence is not admissible during a capital-murder penalty phase because it "is not a factor about the defendant's character or record or any circumstances of the offense"). Furthermore, the circuit court and correctly concluded that Wimbley's alleged mitigation evidence about "Wimbley's great-grandmother and the Wimbley family during 'the days and years of white supremacy in southern Alabama' ..., is irrelevant to Wimbley's character or the circumstances of the offense." (C. 607.)

### I.B.2.

Wimbley next argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance

when they failed to object to the State urging the jury to impose death to punish Mr. Wimbley's family." (Wimbley's brief, p. 58.) Wimbley's argument does not entitle him to any relief for two reasons.

First, Wimbley's argument on appeal does not satisfy Rule 28(a)(10), Ala. R. App. P. Although Wimbley reasserts on appeal the allegations that he raised in his amended Rule 32 petition, (Wimbley's brief, pp. 58-59), he makes no argument as to why the circuit court's summary dismissal of this claim was incorrect. In fact, Wimbley does not even mention in his argument on appeal that the circuit court summarily dismissed this claim. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016)." Woodward, 276 So. 3d at 746.

Second, Wimbley's argument is without merit. In his amended petition, Wimbley alleged that his counsel were ineffective "when they failed to object to the State urging the jury to impose death to punish Mr. Wimbley's family." (C. 390.) Wimbley claimed that, during closing argument, "the prosecutor argued that although life without parole

might be an adequate punishment for Mr. Wimbley, it would not adequately punish his family" and "asserted that Mr. Wimbley's family should have to suffer the same way the victim's family suffered." (C. 390.) Wimbley said that those arguments "were unconstitutional and improper" and that his counsel should have objected. (C. 391.)

The circuit court summarily dismissed this claim because Wimbley "raised the issue underlying this ineffectiveness claim on direct appeal" and this Court held that "the prosecutor's statement was a reply to arguments made by defense counsel. As such, no error, much less plain error occurred.'" (C. 609 (quoting Wimbley, 191 So. 3d at 329).) We agree with the circuit court.

On direct appeal, Wimbley argued "that the prosecutor improperly argued that the jury should recommend a sentence of death to punish Wimbley's family. According to Wimbley, during penalty-phase rebuttal argument the prosecutor 'asserted that Mr. Wimbley's family should have to suffer the same way the victim's family suffered.' (Wimbley's brief, at 94.)" Wimbley, 191 So. 3d at 238-39. This Court, reviewing Wimbley's argument for plain error, held that the comment was a proper reply to comments made by Wimbley's trial counsel and that there was

"no error, much less plain error," with the prosecutor's remarks. Id. at 239.

Because this Court on direct appeal concluded that the prosecutor's argument was proper, Wimbley's "trial counsel were clearly not ineffective for not objecting to it. '[C]ounsel could not be ineffective for failing to raise a baseless objection.' Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001)." Stanley, 335 So. 3d at 54. Accordingly, the circuit court did not err when it summarily dismissed this claim.

### I.B.3.

Wimbley argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to the elected District Attorney personally vouching for the propriety of the death penalty." (Wimbley's brief, p. 59.) Wimbley's argument is without merit and it does not entitle him to any relief.

In his amended petition, Wimbley alleged that his counsel were ineffective "when they failed to object to the elected District Attorney personally vouching for the propriety of the death penalty." (C. 395.)

Wimbley alleged that his counsel should have objected to the following statement:

> "'I have been a prosecutor since 1994. During that seventeen years, this is the first time that I have ever stood before a jury and asked that jury to do what I am about to ask you to do, that is, to recommend a sentenced of death to [the circuit judge].'"

(C. 395 (quoting Record in CR-11-0076, R. 1002).) Wimbley said that this comment "could have no other effect than to inform the jury that the elected District Attorney had reached the conclusion that death was the appropriate sentence for Mr. Wimbley." (C. 396.) Wimbley further claimed that the "prosecutor's comments misstated the law, were misleading to the jury, and skewed the juror's analysis towards a death sentence." (C. 400.)

The circuit court summarily dismissed this claim because "Wimbley raised the issue underlying this ineffectiveness claim on direct appeal" and this Court found that there was no error in the prosecutor's comments. (C. 610.) We agree with the circuit court.

On direct appeal, Wimbley, citing the same portion of the prosecutor's argument that he cites in his amended petition, argued that "'the prosecutor in [his] trial improperly vouched for the propriety of a

death sentence in [his] case' and improperly gave his personal opinion that a sentence of death was appropriate." Wimbley, 191 So. 3d at 236. This Court rejected Wimbley's argument as follows:

> "[I]t is clear that the prosecutor was not giving a personal opinion regarding the death sentence or vouching for a sentence of death. Rather, the prosecutor was properly arguing in favor of a sentence of death and properly reminding the jury of the gravity of its penalty-phase role. Therefore, this Court finds no error, plain or otherwise, in the prosecutor's comments. Rule 45A, Ala. R. Crim. P."

Wimbley, 191 So. 3d at 237.

Because this Court on direct appeal concluded that the complained-of argument was proper, Wimbley's "trial counsel were clearly not ineffective for not objecting to it. '[C]ounsel could not be ineffective for failing to raise a baseless objection.' Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001)." Stanley, 335 So. 3d at 54. Accordingly, the circuit court did not err when it summarily dismissed this claim.

### I.B.4.

Wimbley argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to the State's incorrect, unconstitutional argument that unintentional killings are capital murder in Alabama."

82

(Wimbley's brief, p. 60.) This argument does not entitle Wimbley to any relief for two reasons.

First, Wimbley's argument on appeal does not satisfy Rule 28(a)(10), Ala. R. App. P. In raising his argument on appeal, Wimbley reasserts the allegations that he raised in his amended Rule 32 petition, notes that the circuit court concluded that his claim was without merit, and claims that he is entitled to "[c]ollateral relief" because "these comments denied [him] his right to due process, a reliable sentencing, and a fair trial before an impartial jury, pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama law." (Wimbley's brief, pp. 60-61.) But Wimbley makes no argument on appeal and cites no authority showing how the circuit court's summary dismissal of this claim was incorrect. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016)." Woodward, 276 So. 3d at 746.

Second, even if Wimbley's argument had complied with Rule 28(a)(10), it is without merit. In his amended petition, Wimbley alleged

that his counsel were ineffective "when they failed to object to the State's incorrect, unconstitutional argument that unintentional killings are capital murder in Alabama." (C. 401.) Wimbley alleged the prosecutor made this argument in voir dire and repeated it during the penalty-phase closing argument. (C. 401.) The circuit court summarily dismissed this claim because "Wimbley raised the issue underlying this ineffectiveness claim on direct appeal" and this Court found that any error in the prosecutor's comments was "harmless." (C. 611.) We agree with the circuit court.

On direct appeal, Wimbley argued "that the prosecutor misstated the law and misled the jury by stating that an unintentional murder could rise to the level of capital murder. Specifically, Wimbley argue[d] that a capital-murder conviction requires the State to prove specific intent to kill; therefore, the prosecutor's argument that an unintentional murder can be capital murder was erroneous." Wimbley, 191 So. 3d at 228. This Court, reviewing Wimbley's argument for plain error, concluded that the prosecutor's comments were erroneous, but held that "any error in the prosecutor's statement was harmless." Id. at 229.

This Court's holding on direct appeal that the prosecutor's statement was harmless error forecloses any finding that Wimbley's counsel's failure to object to the State's "improper characterizations of its burden of proof during voir dire" prejudiced him under Strickland. See, e.g., Smith, 71 So. 3d at, 26 (holding that, "[b]ecause we found that the substantive issue underlying this claim was at best harmless, Smith cannot meet the prejudice prong of the Strickland test"); and Gaddy, 952 So. 2d at 1160 ("Harmless error does not rise to the level of prejudice required to satisfy the Strickland test."). Because Wimbley cannot establish prejudice under Strickland, the circuit court properly dismissed this claim.

### I.B.5.

Finally, Wimbley contends that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance when they failed to object to the State's argument that the jury promised during voir dire to not consider Mr. Wimbley's youth as a mitigating factor." (Wimbley's brief, p. 61.) The totality of Wimbley's argument is as follows:

> "The court found that this was without merit and is
> denied. (C. 613.) That decision, however, was in error. Age is

always a mitigating factor. See Eddings v. Oklahoma, 455 U.S. 104 (1982). Therefore, counsel's failure to object constituted ineffective assistance of counsel."

(Wimbley's brief, p. 61.)

Wimbley's argument on appeal does not satisfy Rule 28(a)(10), Ala. R. App. P. Although Wimbley argues that his counsel was ineffective and that the circuit court denied his claim and sets out the general proposition of law that "[a]ge is always a mitigating factor," this Court has explained:

> "'Rule 28(a)[(10)], ... requires parties to include in their appellate briefs an argument section with citations to relevant legal authorities and to portions of the record relied on in their claims for relief.' Hamm v. State, 913 So. 2d 460, 486 (Ala. Crim. App. 2002). 'The purpose of Rule 28, Ala. R. App. P., outlining the requirements for appellate briefs, is to conserve the time and energy of the appellate court and to advise the opposing party of the points he or she is obligated to make.' Ex parte Borden, 60 So. 3d 940, 943 (Ala. 2007). ...

> "'Authority supporting only "general propositions of law" does not constitute a sufficient argument for reversal.' Hodges v. State, 926 So. 2d 1060, 1074 (Ala. Crim. App. 2005). We conclude by recognizing that arguments that do not comply with Rule 28(a)(10), Ala. R. App. P., are deemed waived."

Hooks v. State, 141 So. 3d 1119, 1123-24 (Ala. Crim. App. 2013).

Here, Wimbley's argument on appeal does not provide this Court with sufficient authority showing how the circuit court erred when it

summarily dismissed this claim. Accordingly, Wimbley's argument fails to satisfy Rule 28(a)(10), Ala. R. Crim. P. Even had it satisfied Rule 28, however, Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that his counsel were ineffective when they "failed to object to the State's argument that the jury promised during voir dire to not consider Mr. Wimbley's youth as a mitigating factor." (C. 404.) The circuit court summarily dismissed this claim because "Wimbley raised the issue underlying this ineffectiveness claim on direct appeal" and this Court held that the prosecutor's statements were not error. (C. 612-13.) We agree with the circuit court.

On direct appeal, Wimbley argued that the prosecutor made an improper comment during the penalty phase closing argument to hold "the jurors to their commitment [in voir dire] not to consider Mr. Wimbley's age." Wimbley, 191 So. 3d at 239. This Court, reviewing Wimbley's claim for plain error, held that

> "the prosecutor merely argued that the jury should not give any mitigating weight to Wimbley's age at the time of the offense. Those comments are appropriate in 'our adversarial system of criminal justice, [where a] prosecutor seeking a sentence of death may properly argue to the jury that a death sentence is appropriate.' Vanpelt, 74 So. 3d at 91. Consequently, Wimbley has not shown that any error, much

87

less plain error, resulted from the prosecutor's statement. Rule 45A, Ala. R. App. P."

Wimbley, 191 So. 3d at 240.

Because this Court on direct appeal concluded that the complained-of argument was appropriate, Wimbley's "trial counsel were clearly not ineffective for not objecting to it. '[C]ounsel could not be ineffective for failing to raise a baseless objection.' Bearden v. State, 825 So. 2d 868, 872 (Ala. Crim. App. 2001)." Stanley, 335 So. 3d at 54. Accordingly, the circuit court did not err when it summarily dismissed this claim.

## I.C. Sentencing Phase

Wimbley next argues that the circuit court erred when it summarily dismissed his claim that his counsel "provided ineffective assistance during the sentencing phase." (Wimbley's brief, p. 61.) The totality of Wimbley's argument on appeal is as follows:

> "After learning that their preparation was insufficient during the penalty phase, Mr. Wimbley's trial counsel was required to investigate their client's background to make a persuasive case for a life sentence. But counsel did not, so they did not present any meaningful arguments for a life sentence at the sentencing phase. The court found that this was deficiently plead[ed] and therefore denied. (C. 615.) Mr. Wimbley met his burden of pleading with the sufficiency and specificity required by Bui and Rules 32.3 and 32.6(b), and, as such, the circuit court erred in summarily dismissing this claim."

(Wimbley's brief, pp. 61-62.) Wimbley's argument does not satisfy Rule 28(a)(10), Ala. R. App. P.

Although Wimbley argues that his counsel should have investigated further into Wimbley's background and presented that information to the circuit court at sentencing and argues that his claim was sufficiently pleaded, Wimbley makes no argument on appeal and cites no authority showing how the circuit court's summary dismissal of this claim was incorrect. "This Court has held that similar failures of argument do not comply with Rule 28(a)(10), Ala. R. App. P., and constitute a waiver of the underlying postconviction claim. See, e.g., Morris v. State, 261 So. 3d 1181 (Ala. Crim. App. 2016)." Woodward, 276 So. 3d at 746. Even so, Wimbley's argument is without merit.

In his amended petition, Wimbley incorporated by reference the mitigation evidence, he said, his counsel should have discovered before the penalty phase of his trial and alleged that his counsel were ineffective because they failed "to conduct any additional investigation or prepare a meaningful sentencing strategy after the jury's death recommendation." (C. 412.) Wimbley claimed that his counsel's failure to investigate prevented them from presenting "any meaningful arguments for a life

89

sentence." (C. 412.) The circuit court summarily dismissed Wimbley's claim, finding that it was insufficiently pleaded because "Wimbley cites no legal authority to this Court to support the proposition that his trial counsel were required to conduct additional investigations following the jury's recommendation of death. Because he does not cite any authority, Wimbley has failed to clearly state any proper ground for relief." (C. 615.) The circuit court did not err when it summarily dismissed this claim.

In State v. Mitchell, [Ms. CR-18-0739, Feb. 11, 2022] ___ So. 3d ___, ___ (Ala. Crim App. 2022), this Court reversed the circuit court's judgment in a Rule 32 petition, in which the circuit court concluded that Mitchell's trial counsel were ineffective when they failed to present additional mitigation evidence at the sentencing hearing before the trial court. This Court explained:

> "[U]nder Alabama's capital-sentencing scheme in effect at the time of Mitchell's trial and sentencing, this Court in Boyd v. State, 746 So. 2d 364, 398 (Ala. Crim. App. 1999), held: 'Section 13A-5-47, Ala. Code 1975, does not provide for the presentation of additional mitigation evidence at sentencing by the trial court. Therefore, trial counsel did not err in failing to do so.' (Emphasis added.) Although in Woodward v. State, 123 So. 3d 989, 1034 (Ala. Crim. App. 2011), this Court characterized that holding in Boyd as 'obiter dictum,' six months before the decision in Woodward (and five years after Mitchell's trial), this Court reaffirmed Boyd in Miller v. State, 99 So. 3d 349, 424 (Ala. Crim. App. 2011),

quoting with approval the following from the trial court's order denying relief: '"[T]rial counsel could not be ineffective for failing to present additional mitigation evidence during the sentencing hearing because [former] 'Section 13A-5-47, Ala. Code 1975, does not provide for the presentation of additional mitigation evidence at sentencing by the trial court.' Boyd v. State, 746 So. 2d 364, 398 (Ala. Crim. App. 1999)."' Simply put, it would not have been unreasonable for Mitchell's counsel to rely on this Court's holding in Boyd, and the circuit court thus erred in concluding that trial counsel was ineffective for not presenting additional mitigating evidence at the separate sentencing hearing before the trial court. Cf. State v. Tarver, 629 So. 2d 14, 18-19 (Ala. Crim. App. 1993) ('Counsel's performance cannot be deemed ineffective for failing to forecast changes in the law.').

State v. Mitchell, ___ So. 3d at ___ (footnote omitted).

Wimbley's trial began in August 2011, which was one month after this Court released its decision in Miller v. State, 99 So. 3d 349 (Ala. Crim. App. 2011), in which this Court reaffirmed its earlier holding in Boyd v. State, 746 So. 2d 364, 398 (Ala. Crim. App. 1999), that § 13A-5-47, Ala. Code 1975, does not provide for the presentation of additional mitigation evidence at sentencing by the trial court. Wimbley's trial was also held about three months before this Court released its decision in Woodward v. State, 123 So. 3d 989, 1034 (Ala. Crim. App. 2011), which cast some doubt on its holding in Boyd. The judicial sentencing hearing

and imposition of Wimbley's sentence occurred two months before Woodward was decided.

Here, as in Mitchell, Wimbley's trial counsel was not ineffective for failing to present additional mitigation evidence to the trial court during the judicial sentencing hearing when Boyd and Miller both held that his counsel could not present additional argument on mitigation evidence that was not presented at the penalty phase of Wimbley's trial. Accordingly, Wimbley's claim that his counsel were ineffective for failing to present additional mitigation evidence is without merit, and the circuit court did not err when it summarily dismissed this claim.

## II. Cumulative Prejudice of Counsels' Deficient Performance

Next, Wimbley raises a two-sentence argument that the circuit court erred when it failed to "view the totality of prejudice arising from all counsel's errors." (Wimbley's brief, p. 62.) Wimbley's argument does not satisfy Rule 28(a)(10), Ala. R. App. P., and this Court will not consider it.

## III. Failure to Disclose

Wimbley next argues that the circuit court erred when it summarily dismissed his claim that "State violated [his] rights to due process of law

… when it failed to disclose to [him] that one of its crucial witnesses had reasons to falsify her testimony against him." (Wimbley's brief, p. 63.) Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that the State had withheld evidence from him; namely, that "the State did not disclose that one of its key witnesses, Barbara Washington, had reason to falsify her testimony." (C. 417.) Wimbley alleged as follows:

> "Upon information and belief, Ms. Washington had a boyfriend at the time of Mr. Wimbley's trial. That boyfriend had a pending criminal case in Washington County. He was incarcerated for that case. And that pending case was dismissed because of Ms. Washington testifying against Mr. Wimbley."

(C. 417.) Wimbley claimed that this "information is material because it impeaches the motivations of a key state witness" who "saw Mr. Wimbley running away from Harris Grocery Store around the time of the murder." (C. 417.) Wimbley said that, if the State had "disclosed that Ms. Washington had reasons to be biased toward the State, Mr. Wimbley would have impeached her and exposed that she was not a neutral witness. The evidence against Mr. Wimbley would have been thinner." (C. 418.)

The circuit court summarily dismissed Wimbley's claim, in part, as follows:

> "The Court finds that this <u>Brady[ v. Maryland</u>, 373 U.S. 83 (1963),] claim fails to meet the specificity and full fact pleading requirements of Rules 32.3 and 32.6(b), Ala. R. Crim. P. The Alabama Court of Criminal Appeals has held that 'alleging "upon information and belief" that something happened is nothing more than a speculative assertion, and "[s]peculation is not sufficient to satisfy a Rule 32 petitioner's burden of pleading."' <u>Brooks</u>, [340 So. 3d at 474] (citation omitted). Wimbley also fails to plead in his petition when he learned the State suppressed evidence concerning Ms. Washington's motive to testify. <u>See</u> <u>Id.</u> (holding that Brooks failed 'to plead sufficient facts to show that a <u>Brady</u> violation occurred, which includes an allegation of when the petitioner learned of the withheld or suppressed evidence'). Further, Wimbley fails to identify Ms. Washington's alleged boyfriend by name, the specific crime for which he was supposedly charged, or any circumstances surrounding the resolution of his case."

(C. 618.) We agree with the circuit court.

As the circuit court pointed out, Wimbley failed to set out a full factual basis for his claim that the State withheld impeachment evidence from him in two ways. First, although Wimbley alleged that the State had withheld impeachment evidence concerning Washington's motive to testify against him at trial, Wimbley qualified his allegation with the phrase "upon information and belief." As the circuit court noted, this Court has held that "alleging 'upon information and belief' that

something happened is nothing more than a speculative assertion, and '[s]peculation is not sufficient to satisfy a Rule 32 petitioner's burden of pleading.' Mashburn v. State, 148 So. 3d 1094, 1125 (Ala. Crim. App. 2013)." Brooks, 340 So. 3d at 474. Second, Wimbley failed to plead any facts to show that he discovered this information about Washington after his trial -- that is, he failed to plead that this information was unknown to him before and/or during his trial. See Brooks, 340 So. 3d at 474 (holding that, to sufficiently plead a Brady claim, a Rule 32 petitioner must plead facts showing when he or she learned of the withheld evidence). "Although, pursuant to the holding in Ex parte Beckworth, 190 So. 3d 571 (Ala. 2013), [Wimbley] was not required to plead sufficient facts to establish a newly discovered evidence claim or plead sufficient facts to overcome the grounds of preclusion set out in Rule 32.2(a)(3) and (5), [Wimbley] still had to plead sufficient facts to show that a Brady violation occurred, which includes an allegation of when the petitioner learned of the withheld or suppressed evidence." Brooks, 340 So. 3d at 474. Because Wimbley failed to sufficiently plead his claim, the circuit court did not err when it summarily dismissed it.

95

## IV. Cruel and Unusual Punishment

Finally, Wimbley argues that the circuit court erred when it summarily dismissed his claim that he "is severely mentally ill" and that "[e]volving standards of decency prohibit [the State] under the Eighth Amendment's prohibition against cruel and unusual punishment from executing [him] because he is severely mentally ill." (Wimbley's brief, p. 65.) Wimbley's argument is without merit.

In his amended petition, Wimbley alleged that he "is severely mentally ill," and that "those who suffer from severe mental illness should be a class of which execution is not possible." (C. 418-19.) Wimbley claimed that "evolving standards of decency require that we add to the list of those who cannot be executed, the severely mentally ill," which, he said, "would be an extension of Roper[ v. Simmons, 543 U.S. 551 (2005)], Panetti[ v. Quartermen, 551 U.S. 930 (2007)], and Atkins[ v. Virginia, 536 U.S. 304 (2002)]." (C. 419-20.) Although Wimbley alleged that he "is severely mentally ill" and that "[o]ne need only spend a few hours with him to know he is suffering from mental illness" (C. 422), Wimbley also alleged that he "cannot fully develop this claim" until the

circuit court provided him with $8,500 to pay Dr. John Fabian to evaluate him. (C. 424-27.)

The circuit court summarily dismissed Wimbley's claim as precluded under Rule 32.2(a)(3) and Rule 32.2(a)(5), Ala. R. Crim. P., because it could have been, but was not, raised either at trial or on direct appeal.[10] (C. 619.) The circuit court did not err when it dismissed this claim.

This Court has held that severely mentally ill people who are nevertheless competent are eligible for the death penalty. See, e.g., Dearman v. State, [Ms. CR-18-0060, Aug. 5, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022) (holding that Dearman's argument that he suffers from "severe mental illness" did not render his death sentence unconstitutional); and Keaton v. State, [Ms. CR-14-1570, Dec. 17, 2021] ___ So. 3d ___, ___ (Ala. Crim. App. 2021) (holding that Keaton's argument that she suffers from bipolar disorder and post-traumatic

___

[10]In its order, the circuit court also held that Wimbley was not entitled to $8,500 to hire Dr. Fabian. (C. 619.) Wimbley does not challenge that portion of the circuit court's judgment on appeal. Thus, we will not consider it. See Bryant v. State, 181 So. 3d 1087, 1121 (Ala. Crim. App. 2011) ("Because none of these claims are argued by Bryant in his brief on appeal, they are deemed abandoned and will not be considered by this Court.").

stress disorder did not render her death sentence unconstitutional). As set out above, Wimbley alleged generally that he is "severely mentally ill." (C. 418.) Wimbley did not allege, however, that his unidentified severe mental illness rendered him either insane, intellectually disabled, or incompetent. Thus, Wimbley's allegation that he is severely mentally ill and that his death sentence violates the Eighth Amendment to the United States Constitution is without merit. Accordingly, the circuit court did not err when it summarily dismissed this claim.

What is more, the circuit court correctly concluded that Wimbley's allegation is a constitutional claim that is nonjurisdictional and subject to the grounds of preclusion set out in Rule 32.2, Ala. R. Crim. P. See, e.g., McNair v. State, 706 So. 2d 828, 854 (Ala. Crim. App. 1997) ("The appellant's contention that his death sentence should be vacated because his execution would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments was precluded because it could have been but was not raised at trial or on appeal. Rule 32.2(a)(3) and (5)."). Because Wimbley could have raised this claim at trial or on appeal, but did not, the circuit court correctly concluded that Wimbley's claim was precluded under Rule 32.2(a)(3) and Rule 32.2(a)(5).

Even so, Wimbley's claim was insufficiently pleaded. As set out above, in his amended petition, Wimbley alleged generally that he is "severely mentally ill." (C. 418.) Wimbley did not allege that he suffers from any specific severe mental illness, he did not allege that he has ever been diagnosed with a severe mental illness, and he did not allege that his unidentified severe mental illness renders him unable to " 'rational[ly] understand[]' why the State seeks to impose" the death penalty on him, see Madison v. Alabama, 139 S. Ct. 718, 722 (2019) (quoting Panetti v. Quarterman, 551 U.S. 930, 959 (2007)). Because Wimbley failed to sufficiently plead his claim that his death sentence is unconstitutional, the circuit court did not err when it summarily dismissed this claim.

Conclusion

Based on these reasons, the judgment of the circuit court is affirmed.

AFFIRMED.

Windom, P.J., and McCool and Minor, JJ., concur. Kellum, J., concurs in the result.